## No. 7750.

CITIZENS' BANK VS. ALEXIS FERRY AND WIFE.

Up to the moment of its adjudication by the sheriff the property of a debtor which has been seized under execution may be validly sold, or mortgaged by him, subject to the rights of the seizing creditor. And if the seizing creditor waives his rights in favor of a mortgage executed by the seized debtor, such mortgage will, after being recorded, rank any mortgage subsequently put on the property by the seizing creditor who bought it in.

A mortgage creditor effectively accepts a mortgage in his favor either by taking the mortgage notes, or by an authentic act. The transfer of a note transfers every thing accessory to and securing the same.

A mortgage not recorded for some time after its execution is, from the moment of its record, superior in rank to any mortgage subsequently executed.

APPEAL from the Fourth Judicial District Court, parish of St. James. *Duffel*, J.

Armand Pitot and St. M. Bérault for plaintiff and appellee:

First—The possession of the sheriff did not divest Alexis Ferry of *his ownership*, which continued until the adjudication made, on the 12th of February, 1868, to his wife.

"Ownership and the possession of a thing are entirely distinct." C. C. 488.   Down to the moment of adjudication the debtor remains the owner of his seized property.  C. C. 663.

Possession is not necessary or essential to the contract of sale or of mortgage, 28 An. 650-1, nor to an action of partition, C. C. 1243, for it is *not the possession, but the ownership* which is the basis of the sale, mortgage, and partition.

Counsel for plaintiff quotes also, in connection with the above, C. C. 3267–8, 476, 483, 1879, 2423, 2424, 1881 ; 28 A. 650; C. C. 2428, 1895, 1940, 3399, 3459 ; C. P. 690, 694, 656, 657, 658 ; C. C. 1757, 1754.

Second—*By mere operation of law*, and therefore "according to law," the mortgage was accepted and acquired by the bank at the moment of its execution, on the 4th February, 1868.

By the delivery of notes, on the 4th of February, 1868, the law presuming that the notes were delivered to the bank on the day of *their date*, and that the receipt of the notes operated *eo instanti*, the acceptance of the accessory mortgage.  C. C. 2615.

"He who has once acquired the ownership of a thing by one title *cannot afterward* acquire it by another title."  C. C. 487.

As to *unilateral* contracts and acceptance, see C. C. of 1825, articles 1758, 1773, 1774, 1798, 1805 ; Pothier's Obligations No. 9 ; Pothier's Prêts No. 20 ; 11 M. 217 to 220 ; H. D. p. 938, Nos. 3, 7, 2, and 251-3-4 ; 2 L. 552, 547 ; 13 L. 254, 267 ; 6 R. 143, 150 ; 7 Al. 349 ; 9 An. 130 ; 11 Al. 402 ; H. D. p. 1001 ; No. 9, p. 1002 ; No. 16 ; Code Napoleon, art.

2127 ; La Cour de Lyon, arrêt du 9 Mai, 1837 ; Dalloz, An. 1838, II.
7 ; La Cour de Cassation a jugé l'affirmative, arrêt du 5 Août, 1839,
ch. c. IV. Sivey 39 I. 753 ; 23 A. 272 ; 16 A. 437 ; 24 A. 36 ; 23 A. 357 ;
30 A. 39 ; Louque's Digest, p. 436 ; (c) No. 6.

A mortgage is binding on the parties to it. C. C. 3312, 3315, 3316, 3522.
That Madame Ferry was a party to the act of 4th February, 1868. See
C. C. 3314, 3315, 3316, of 1825 ; 28 Al. 661-2 ; 26 Al. 552-3 ; 22 Al.
336-7.

F. P. Poché for defendant and appellant :

First—A valid mortgage cannot be imposed on an immovable by the
owner thereof pending its seizure by the sheriff. C. C. 3300 ; 5 M.
268 ; 7 La. 487.

Second—A mortgage recorded months after the owner who had exe-
cuted it had ceased to be owner, and not accepted by any one, is not
binding on the property. 20 A. 488 ; 29 A. 321 ; 30 A. 11.

Third—We hold that the act of February 4th, 1868, registered on the
23d of April, 1868, was ineffectual as to any third party dealing with
Mrs. Ferry, touching said Home-Place plantation, which became
her property under the adjudication of the sheriff on the 12th of
February, 1868.

Fourth—Nor will it avail the plaintiff to say that E. J. Gay & Co. were
informed by the recorder's certificate in the act of May 24th, 1871,
of the existence of the Citizens'-Bank mortgage, resulting from the
act of February 4th, 1868. Our answer is dictated by the court in
20 A. 204 and 427, and 25 A. 180 : " *A recital of a pre-existing mort-
gage cannot supply the inscription.*"

---

The opinion of the court was delivered by

DeBlanc, J. In November 1867, Mrs. Ferry obtained, against her
husband, a judgment separating her in property from him, and con-
demning him to pay her over one hundred thousand dollars, the
re-imbursement of which was secured by legal mortgage.

In January 1868, and by virtue of a writ of *fi. fa.* issued in execu-
tion of that judgment, the sheriff seized a plantation belonging to the
husband, and which—pending that seizure—the latter mortgaged to the
Citizens' Bank, to secure the payment of a loan of nineteen thousand
dollars.

This loan is evidenced by an act passed before the recorder of the
parish of St James, who certified—at its foot—that it was duly recorded
on the day it was passed ; but it was shown—on the trial—that it had
been inscribed in the book of mortgages on the 23d of April, two months
and eleven days after the seized and hypothecated property had been,

by the sheriff, adjudicated to Mrs. Ferry, in partial satisfaction of the writ issued on her judgment.

The amount of that loan—the reality of which is not disputed *in the pleadings*—was represented by four notes delivered to Alexis Ferry, two of which are now, and have been in the possession of the Citizens" Bank since, and—we have reasons to believe—before the 4th of January 1869.

In July 1873, Legendre—as the attorney-in-fact of the bank—accepted the mortgage granted by Ferry in 1868, and which—as we have already said—was recorded on the 23d of April of that year; and—in December 1875—said bank obtained an order commanding the seizure and sale of the morgaged property, to satisfy the two notes held by it.

Gay & Co—the creditors of Mrs. Ferry—enjoined the execution of that order, on the grounds:

1. That the mortgage sought to be enforced by the bank is null, because it was executed while the property on which it bears was in the sheriff's possession and under seizure.

2. That it was accepted by the bank long after Mrs. Ferry had given—on the property seized—two other mortgages securing their claims, and which were duly recorded, one on the 21st of February 1870, the other on the 29th of May 1871.

3. That the mortgage, consented to by Ferry in favor of the bank, was recorded only after he had ceased to be, and after his wife had become the owner of the hypothecated property.

The injunction was dissolved, Gay & Co. condemned to pay—as damages—the sum of three hundred and fifty dollars, and they have appealed.

Mrs. Ferry intervened in the act of mortgage from the husband to the bank, subordinated to that mortgage every right which she had! on the property described in said act, and—by an express stipulation—gave it precedence over her own judgment. It was eight days after this important stipulation, that the hypothecated property was adjudicated to her.

Nearly two years after that adjudication—on the 19th of February 1870—Mrs. Ferry granted to Philip Buchanan, and on the property which she had thus acquired, a mortgage which he—on the 4th of January 1876—transferred to Gay & Co., who already had—on said property—a mortgage consented in their favor, by that lady, on the 24th of May 1871.

In the last-mentioned act—that of the 24th of May—from Mrs. Ferry to Gay & Co.—there is a clear and absolute acknowledgment of the existence *and registry* of the mortgage granted to the bank, and "that acknowledgment was based on not less than the recorder's certifi-

cate, which was annexed to said act. Is this not more than the mere recital, which—as held by this court—cannot supply the inscription of the mortgage? Here, we have the recital, the certificate and admission of registry.

In his brief—but only there—the distinguished counsel who represents the plaintiff in injunction contends that the bank has not shown that Ferry has received either the amount specified in the act, or any other amount. That fact is not denied in the pleadings and fully established by an authentic act. Gay & Co. claim that—so far as they are concerned—the assailed mortgage is a nullity, not because it was given without consideration, but for the reasons already mentioned and which we now proceed to discuss.

Who will pretend—the counsel asks—that, pending the seizure of his immovable property, the seized debtor can legally transfer title thereto? His title, it is manifest, can be divested but by the sheriff's adjudication, and—down to that adjudication—he can alienate or encumber his property, as he pleases, without—however—prejudice to the rights acquired by and under the seizure.

C. P. 663 ; C. C. 491 (483).

"The property seized"—the counsel adds—"must be taken in *actual possession* of the sheriff, and the incapacity of the debtor to alienate or mortgage the same, attaches at the very moment of the seizure." As taught by Pothier, the sheriff does not possess, he merely detains; and—after assimilating his detention to that of lessees and depositaries, he says :

"Il en est de même d'un gardien ou commissaire établi à une saisie, soit de meubles, soit de fruits pendans par les racines, soit même à la saisie réelle d'un héritage. Ce gardien ou commissaire n'a qu'une simple garde des choses saisies, auxquelles il est établi gardien ou commissaire ; il n'en a aucune possession. Il les détient pour et au nom de la partie saisie ; et c'est la partie saisie qui continue d'en avoir par lui la possession, jusqu'à ce qu'elle en soit dépossédée par la vente et adjudication des choses saisies. Notre Coutume d'Orléans en a une disposition en l'art. 3, où elle dit : 'Main de justice ne dessaisit personne.'"

C'est aussi ce qu'enseigne Pomponius à l'égard des différentes espéces de saisies, de biens, qui étaient en usage par le droit romain.

"La saisie, que des créanciers font des meubles, ou même des héritages de leur débiteur, ne lui on fait pas perdre la possession, comme nous l'avons vu suprâ."

Traité de la Possession, Nos. 15, 16, 78.

As justly remarked by the bank's counsel, the theory of their opponent is daily refuted by the many private sales from seized debtors, to third parties, who employ the price of sale to pay the seizing credit-

·or's claim, and where one can sell, he can mortgage, subject to the limitation affecting his right of alienation.

C. C. 3300 (3267), 3301 (3268).

The bank's mortgage—we are told—was not accepted according to law. It was granted on the 4th of February 1868, and—according to the evidence—was twice accepted—first, when the notes which it secured, were delivered to and taken by the bank—that was before the dates of the mortgages granted to Buchanan and Gay & Co.—and, afterward, by an authentic act passed on the 9th of July 1873.

C. C. 2645 (2615).

Was that last acceptance indispensable to the validity and enforce- ·ment of the mortgage? It was not. In and by the act which evidences that mortgage, the bank—as urged by its counsel—contracted no obli- .gation, but—on the contrary—an obligation was, therein, stipulated in favor of the bank, and accepted by it before the date when Buchanan ·and Gay & Co. became the creditors of Mrs. Ferry.

Could that mortgage be accepted otherwise than by a notarial act? It could be and it was accepted by the transfer, delivery and receipt of the notes—inasmuch as the transfer of a credit includes every thing which is an accessory to the same—as suretyships, privileges and mort- gages—and had the loan not been represented by notes, the mortgage could have been accepted, or rather its acceptance signified by the in- stitution of a suit to foreclose it.

C. C. 2645 (2615.)

In Millaudon vs. Allard, and Hill vs. Barbow, this court held that ·a mortgage executed and recorded, though not appearing to have been ·accepted, takes precedence of a posterior mortgage accepted and re- corded before the acceptance of the first, and in "Ellis vs. Simms et al.," "that the delivery of the note completed the contract, and that the ac- ·ceptance of the note was an acceptance of the mortgage securing its payment."

2d L. 552; 6 R. 150; 2 A. 251.

It was held by the courts of Lyon and the Court of Cassation :

" That the pure and simple acknowledgment of a debt, with an ;hypothecary encumbrance, can constitute an unilateral contract, and be regularly made by the debtor alone, and that the creditor in whose favor ·such an acknowledgment was made, and who wishes to take advantage of it, is not bound to accept it by notarial act.

" That the creditor's acceptance of the hypothecary inscription con- sented in his favor by an unilateral act, reverts—as to its effect—to the date of the inscription, even though—between that date and the ac- ceptance—rights may have been acquired on the mortgaged property, .and by third parties."

Citizens' Bank vs. Ferry and Wife.

Journal du Palais—année 1839—vol. 2 pp. 125-6-7-8.

According to the terms of the act of 4th of February, the loan from the bank to Ferry preceded the mortgage from Ferry to the bank, and—" in Bradford vs. the Heirs of Brown," commenting on an act which—as that referred to—had been signed but by one of the interested parties, this court said: "When the price has been paid beforehand, the vendor—thereafter—is the only person who binds himself and contracts the obligation: his signature is therefore required, etc. The assent of the vendee, when he is admitted by the vendor to have paid the price, cannot be denied by the vendor. He is estopped, by his deed, from denying what he has therein solemnly admitted."

11 M. 219 ; Rogion, p. 1529.

It is lastly contended by Gay & Co. that—on the 12th of February 1868—when Mrs. Ferry purchased the plantation—the bank's mortgage was not recorded, and that she acquired it free from the encumbrance ; but she was a party to the act by which that mortgage was granted, and—by her own consent, under her own agreement, the plantation passed into her hands subject to the mortgage given by her husband, and to the privity conceded by her. Up to the 23d of April, when the bank's mortgage was duly recorded, it remained without effect as to third persons ; but it was long after that inscription that Gay & Co. became the creditors of Mrs. Ferry, with full and acknowledged notice of the encumbrance bearing on her property.

C. C. 2236 (2233), 3342 (3314), 3343 (3315) ; 22 A. 336 ; 26 A. 552 ; 28 A. 661.

Of the several defenses suggested by their counsel's ingenuity, not one is tenable.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.

Rehearing refused.