## No. 11,561.

### City of New Orleans vs. Board of Control New Basin Canal.

The city of New Orleans having, during the existence of the New Basin and Shell Road Corporation, drained from the Melpomene Canal into the New Basin, at a designated point, and this drainage having been continued by the Legislature on the State's acquiring said canal, the Board of Control of said canal has no authority to close the culvert through which the drainage entered the canal. Having closed the culvert the Board of Control must offer equal facilities for drainage into the canal. The State has the power to prevent any drainage into the canal, and the Board of Control can restore the old culvert. Until it does

16

so, it can not interfere with the drainage into the canal through other practical channels, particularly where the board has, to a certain extent, designated this other practical channel.

APPEAL from the Civil District Court for the Parish of Orleans. Ellis, J.

E. A. O'Sullivan, City Attorney, for Plaintiff and Appellant.

M. J. Cunningham, Attorney General (Richard Lyons, of Counsel), for Defendant, Appellee.

The opinion of the court was delivered by

McENERY, J.  This is a proceeding by injunction by the plaintiff to prevent the defendant from closing an outlet for drainage waters from the Melpomene Canal into the New Basin Canal.

The defendant board pleads a general denial, and especially "avers that the cut, the closing of which is sought to be enjoined, was made during the year 1890 by Charles Louque with permission of the board of Control of the New Basin and Shell Road in order that said Louque could perform a contract that he had with the city of New Orleans to dredge the Melpomene tail-race, by transporting the dredgeboat of the said Louque from the New Basin Canal into the tail-race; that said Louque agreed at the time this permission was granted to close the gap or cut at the termination of his contract. It is further alleged that the storm waters and drainage through said cut deposits a sediment in the canal, making the navigation of the same difficult and dangerous without continuous dredging, and that the drainage into the canal creates noxious gases and vapors, dangerous to persons employed in business on the canal, and to the residents in this vicinity.  Assuming the character of plaintiff in reconvention, the defendant alleges that on the 10th day of May, 1893, the night before the issuance of the injunction, and within a few days thereafter, the city of New Orleans, through its officers, maliciously destroyed the work of the defendant board which closed the gap and they ask for a dissolution of the injunction and one hundred and twenty dollars damages, the value of said work. There was judgment in favor of defendant, from which the city of New Orleans appealed.

By Act No. 18 of 1831 there was created a company for the purpose of constructing the New Basin Canal. By Sec. 26 of the act it was provided that after the expiration of thirty-five years after the passage of the act the property in the said canal and road, which was also to be constructed, with all the land on either side, which it had a right to acquire, and which it had acquired by forced sale to the extent of one hundred twenty-five feet on each side of the canal, together with the machines, utensils, toll houses, etc., should belong to the State of Louisiana. The canal, with all its property, at the expiration of said thirty years was to absolutely vest in the State.

Almost contemporaneously with the construction of the canal the city of New Orleans constructed the Melpomene drainage wheel at the junction of Melpomene and Claiborne streets. The object of this drainage machine was to lift the water over the levee on the banks of the canal into a tail-race, from which the water entered the canal through a culvert built by the city.

On the 5th March, 1866, in pursuance of the act of incorporation of March 5, 1831, the canal and its property reverted to the State.

In anticipation of this reversion the General Assembly enacted a law ordering the canal to be leased. In this act it was provided that in the lease there should be a condition inserted that the less e shall permit the culverts now receiving the waters of the Second Drainage District to remain open. It is needless to say that the city of New Orleans during the existence of the corporation could acquire by prescription no rights adverse to the State to which the property was to revert. The State is paramount in its authority over the canal, and no drainage could be permitted in the canal against its will. But the Act No. 12 of 1866 gave permission to the city to drain into the canal at the point where the culvert was first placed. Since the passage of that act there has been no withdrawal of its consent. Therefore the city has the undoubted right to drain into the canal at the point designated until the State shall, by legislative enactment, withhold its permission.

In 1890 the Board of Control gave permission to Chas. Louque to make an opening some six hundred feet from the original culvert built by and used by the city. From this opening Louque dug a short canal to the tail-race, and the drainage of the city passed into the canal through the opening made by Louque.

In 1892 the Board of Control granted permission to McEween &

Co., or their representatives, to cut a channel from the New Basin, beginning on the west side of Dublin street and New Basin, in the Seventh District, and running through the Shell Road into blocks 643 and 620; said channel to be at least thirty-five feet wide and as deep as the New Basin, if said McEween so desires; also unto said Mc-Eween, his heirs or representatives, the privilege to dredge, widen and deepen to a width of sixty-five feet, and as deep as the New Basin, beginning at Dublin street and running west to Madison street, being about thirty-five feet on New Basin property, near the old tail-race, and about thirty feet in block 643, now used by said McEween, the *old tail-race* being unfit for use in present condition. The distance of this ditch is about three hundred and fifty-eight feet long. Said McEween & Co., or their heirs or assigns, agree to build a good bridge, full width of Shell Road, across said ditch or channel which they cut, and to maintain and keep in perfect order so long as the said McEween & Co., or their representatives, desire the privileges above granted, which are made to continue so long as said parties or their heirs may desire.

There shall not be any charges for the privileges granted other than the regular toll charged on logs turned into the canal. The old tail-race must be filled up on Dublin street, so that the crossing on Dublin street can be used for a shell road, making a good street, one hundred feet wide, thus taking in fifty feet for Dublin street drainage canal and fifty feet for Dublin street proper.

We have copied this grant in full. The object of the grant was for the purpose of making a log pond in which to place the logs for McEween & Co., who are or were saw-mill men.

Under this grant or privilege to McEween & Co., the original outlet into the canal was closed. It seems that it was the intention of the Board of Control, in making this grant, to offer the drainage through the Louque cut in lieu of that through the old culvert. But whether this was the intention or not, it is certain the board, in the face of Art. 12 of 1866, Sec. 2, had no right to close the culverts permitted to be continued by said act. And having closed this outlet the board was bound to offer equal facilities to the city to reach the canal. The drainage through the Louque gap was the only practical drainage, and, as stated, we are inclined to the opinion that the board, in the McEween grant, intended to offer this instead of the old culvert. We do not intend to convey the idea that the present

drainage through the Louque gap is permanent. It is within legislative discretion to stop all drainage into the canal. It is within the power of the defendant board to restore the drainage to its old and original channel; until this is done the city can not be restrained from using the present outlet through the Louque gap.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that the injunction herein be perpetuated until the Board of Control restores the original outlet into the canal, as fixed and established prior to the opening of the Louque gap; and it is further ordered that the reconventional demand of defendant be rejected, defendant to pay costs.

## ON APPLICATION FOR REHEARING.

We have attentively considered the application for a rehearing in this case. The only question presented which we think requires attention is whether Act 51 of 1894 repealed the permission granted to the city to drain into the canal by Act 12 of 1866. A careful perusal of the former act does not impress us with the belief that it repealed the latter act. There is no mention made of the withdrawal of the permission granted by Act 12 of 1866. Nor do we think there is any repeal by implication.

The two acts can stand together, and we are of the opinion that Act 51 of 1894 intended only to forbid the city from any further drainage into the canal. We are disposed to treat the matter conservatively, as the Legislature did not speak in positive terms as to the withdrawal of the privilege previously granted to the city. It is, as stated in the opinion, within the power of the State to withdraw the privilege at any time, and we presume that if the State intended to withdraw it would have said so in more positive language than is found in the statute. It may be unnecessary to state it, but to avoid any misunderstanding as to the issues involved and the points decided, we will say that the city of New Orleans must confine itself to the amount of drainage permitted by Act 12 of 1866. She has no right to increase it, and must confine the drainage to the point originally granted so soon as the Board of Control affords the necessary facilities.

Rehearing refused.