(35 South. 889.)

No. 14,853.

HUBER v. JENNINGS-HEYWOOD OIL SYNDICATE et al.*

(Jan. 4, 1904.)

MORTGAGE—FORECLOSURE SALE—SUIT TO ANNUL—TENDER—EXECUTORY PROCESS—NOTE—PRESCRIPTION — PLEADING — CURATOR AD HOC—SEIZURE AND SALE—APPEAL—INJUNCTION—LACHES—TAX SALE.

1. Where the price of property sold by the sheriff is merely credited upon the writ under which the sale is made, a tender of such price is not a condition precedent to an action to annul the sale.

2. Where an act of mortgage running in favor of a named mortgagee and of the holder or holders of the note to secure which the mortgage is given recites the delivery of the note to a person acting for the mortgagee, and the holders of the note thereafter, by executory process, cause the property to be sold in satisfaction of the mortgage, the acceptance of the mortgage is sufficient quoad vendees of the mortgagor by whom the mortgage has been assumed, and quoad their vendee, who acquired after the sale under executory process.

3. Executory process may properly issue upon a note which upon its face appears to be prescribed; and the plea of prescription will not be supplied by the court, nor can it be urged by the mortgagor, or those claiming under him, in an action of nullity, brought after the sale and subsequent resale of the property, the remedy in such case being to enjoin the sale.

4. The mere fact that an order for the issuance of executory process bears no date affords no ground upon which to annul the sale made thereunder, since, in the absence of proof to the contrary, it will be presumed that the order was signed at the time and place contemplated by law.

*Rehearing denied February 15, 1904.

5. In a proceeding via executiva upon an act of mortgage containing the pact de non alienando, the allegation that the mortgagor resides in another state, coupled with a request to that effect, is sufficient to justify the appointment of a curator ad hoc to represent such mortgagor. Persons claiming under him by conveyances of later date than the mortgage are not entitled to notice of the proceeding, and can attack the same only for want of notice to the mortgagor, or by showing, either that he was not absent from the state, or that he was represented in the state, to the knowledge of the plaintiff in such proceeding.

6. When a note payable to the order of the maker, and by him indorsed in blank, of anterior, is identified with a mortgage of subsequent, date, by description, number, and paraph, and the mortgage runs in favor of a named mortgagee and the future holder or holders of the note, it does not matter, for the purpose of such identification, that the act of mortgage recites that the money was borrowed from one person whilst the note recites that it was borrowed from another.

7. An order of seizure and sale is not a judgment in the full sense of that term, but it is a decree of a court in aid of the execution of an obligation which, by law, is given the effect of a judgment quoad the particular property to which it refers, and it is a judgment in so far that an appeal will lie therefrom for the review of the question of the sufficiency of the evidence on which it is based, whilst a remedy by injunction is provided where other objections are relied on. Hence, where the party proceeded against neglects either to appeal or enjoin, and allows the property to be sold and resold, he cannot thereafter attack the proceedings and the title thus acquired in an action of nullity predicated upon matters within the remedies so neglected.

8. The owner of property who has paid his taxes cannot be prejudiced by a sale for the same taxes assessed in the name of another.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Conrad De Baillon, Judge.

Action by Valentine Huber against the Jennings-Heywood Oil Syndicate and others. Judgment for defendants, and plaintiff appeals. Affirmed.

James L. Dormon, Donelson Caffery & Son, Branch K. Miller, and J. Sully Martel, for appellant. Gilbert L. Dupré, Philip Julius Chappuis, and Thomas T. Taylor, for appellees.

Statement of the Case.

MONROE, J. Upon grounds which will be stated hereafter the plaintiff in this suit at-

tacks a mortgage under which certain land was sold to the defendants, as also the title acquired by them, and prays that the same be annulled, and that the title set up by him be recognized. Defendants plead "want of tender," estoppel, and prescription, and for answer allege that they acquired the property in good faith at sheriff's sale, and are in possession, and they pray that the suit be dismissed.

The facts, as disclosed by the evidence in the record, are as follows: Upon March 21, 1873, Henry Gellert purchased from the United States a tract of land in (what is now) the parish of Acadia, described as "Home Lot No. 1, or North ½, Section 41, Township 9 S., (R.) 2 W.—89 acres," and upon July 19, 1889, he executed, before E. M. Burke, notary public, an act of mortgage, which was duly recorded, and which reads in part as follows, to wit:

"* * * Personally came and appeared Henry Gellert, * * * and * * * duly declared that he is justly and truly indebted unto Henry Dickinson of New York City * * * in the sum of $600, borrowed money, had and received, and, in settlement and as evidence thereof, * * * has furnished his bond, or writing obligatory, aggregating the sum of $600, in number and terms as follows, to wit: * * * No. 17,208—$600, due five years after date, made by him to his own order and by him indorsed, in blank, dated Lake Charles, in the parish of Calcasieu, Louisiana, the first day of July, 1889, * * * bearing interest at the rate of eight per cent per annum from date until final payment, and * * * payable at the National Bank of Commerce in New York, said interest being payable semiannually, * * * and, in evidence of his obligation to pay said interest said Henry Gellert has made * * * and annexes to said mortgage bond coupons for the amount of interest due upon said mortgage bond, said coupons * * * bearing interest at eight per cent per annum from their respective maturities until paid, all of which said mortgage bond and coupons, after having been paraphed by me, the said notary, to identify them herewith, were delivered to F. Huber, who hereby acknowledges the receipt thereof, for delivery to said Henry Dickinson.

"Now, in order to secure the full and punc-

tual payment of said bond, in capital and interest, and of said interest coupons, * * * the said Henry Gellert moreover declared that he does by 'these presents specially mortgage and hypothecate in favor of said Henry Dickinson and his heirs and assigns and of any and all such persons as may hereafter be the holder or holders of the said bond or coupons, or either of them, the following described property, situated in the parish of Acadia * * * to-wit: Lot number one (1), or the north half of fractional section forty one (41), Township number nine (9), South, Range number two (2), West, Louisiana meridian, and containing one hundred and sixteen and $52/100$ (116.52) acres, more or less, according to the official plat of the survey of the said land, excepting three (3) acres, used as a burial ground.'" Then follow the pact de non alienando, a stipulation to the effect that the bond shall at once become due and exigible upon the failure of the mortgagor to pay any one of the coupons at maturity, an agreement by the mortgagor to pay the taxes, and a consent that the property be seized and sold in the event of his failure to do so, with confession of judgment in favor of the holder or holders of the bond and coupons for the full amount thereof, together with all costs and charges; and, finally, an agreement to reimburse all taxes paid by such holder or holders, and all attorney's fees, costs, and charges incurred by them for the protection of their rights, for the security of which obligation the mortgagor "further specially mortgages and hypothecates the herein before described property unto and in favor of said mortgagee and all holders of said bonds and coupons, or any one, or more, of them."

The bond referred to, which is identified with the act by the number, description, and the paraph of the notary, and which, together with the unpaid coupons, has been brought up in the original, reads as follows:

"No. 17208     Real Estate     $600 $^{00}/_{00}$
"Mortgage Coupon Bond.

"Know all men by these presents: That I, Henry Gellert, do hereby promise to pay to the order of myself the principal sum of six hundred dollars in lawful money of the United States of America, at the National Bank of Commerce in the City of New York, five

years after date, with interest thereon at the rate of eight per centum per annum, said interest to be paid in semi-annual installments according to the terms and conditions of this bond and the coupons hereto annexed (also ten per centum as attorney's fees, if suit be instituted on this bond). It is also expressly agreed that if default be made in the payment of any of the interest upon the principal sum above mentioned, and any portion thereof shall remain due and unpaid for ten days after maturity, then, and in that event, the principal sum above mentioned, together with all accrued interest, shall, at once, and ipso facto, become due and payable, without notice of any kind whatsoever. It is further expressly agreed that this bond is made under, and is in all respects to be controlled by, the laws of the state of Louisiana, and is made for an actual loan of money, made at Lawrence, Kansas, by the J. B. Watkins Land Mortgage Company, to the said Henry Gellert, on the day of the date hereof, and is secured by a notarial act of mortgage, being a first lien on real estate situated in the parish of Acadia, and state of Louisiana. It is further expressly agreed that the terms and conditions of said act are hereby made part of this obligation. All exemption and appraisement laws are waived. In witness whereof, I have set my hand to this bond, and signed said coupons at Lake Charles, Louisiana, on the first day of July, in the year of our Lord one thousand, eight hundred, and eighty nine.

"[Signed]                    Henry Gellert."

Upon the back of this instrument is the indorsement, "For value received, I do hereby assign and transfer to ——, or order, the within bond. [Signed] Henry Gellert;" as also certain written and printed matter, indicative of its contents.

The coupons, which are likewise duly paraphed by the notary, to identify them with the bond and the act of mortgage referred to, read (the dates of maturity being different):

"24.00/00

'Lake Charles, La. July 1st, A. D. 1889.

"Twelve months after date, I promise to pay to the order of myself, the sum of twenty four dollars, at the National Bank of Commerce, in the City of New York. If not paid at maturity, this coupon shall draw interest at the rate of eight per centum per annum thereafter until paid. This sum being six months interest, due at the maturity hereof, on $600 loaned, as appears by Bond No. 17208.

"No. 2        [Signed] Henry Gellert."

And each of them bears the indorsement, in blank, of Henry Gellert.

During the years from 1892 to 1896 the bond and coupons in question were in the hands of the Watkins Banking Company, at Lake Charles, for collection, for account of the owners, and repeated demands, verbally and in writing, were made upon the maker for payment, which demands were followed by promises on his part to pay. Thus, upon April 2, 1894, the company wrote (after referring to other amounts due): "There is also due on your loan No. 17,208, for $600, for lands in Acadia parish, for interest coupons Nos. 2, 3, 4, 5, 6, 7, 8, and 9, of $24 each, with accrued interest thereon to date, $223. On July 1st, 1894, the last, or No. 10, interest coupon matures, also the principal, or $600. We would be pleased to have you give this matter your prompt attention. You promised us last fall you would pay up this indebtedness when you sold your rice. You now owe, for interest on loan, and on contract, the sum of $412.85, which must be settled up at once. You have to your credit in this bank $26.45 to apply on same. Mr. Watkins and our London office have pressed us to collect payments on these matters, and, if not soon attended to, you are liable to have your contract cancelled and loan foreclosed. Your only recourse now will be to pay us up as soon as possible."

Equally urgent letters, referring to the maturity of the loan, and to Gellert's repeated but unfulfilled promises to pay, and threatening suit, were written him on May 17, August 10, August 14, October 3, October 4, and December 20, 1894, but with no other result than to extract renewed promises, the last of which, in that year, made in writing, reads as follows:

"Jennings, La. Oct. 8th, 1894.

"Watkins Bank, Lake Charles, La. Gentl, —Your notice received, as soon as my rice is threshed, I will come up and settle my debt with you. We are yet in harvest. We try to safe all we can. If bad weather set in we would lose. * * * I made a bargain with

Mr. Ellis to store all your rice in my ware-house. These will help me also to reduce my debt to you. I bleve I be able to make all thinks satisfactorie and I hope you will make me no trouble and cost unnecessarie as I intend to pay all my debt. I hope you kindly grant me some time until we are able to get money. Yours respectfully [Signed] H. Gellert."

Similar promises, though not in writing, appear to have continued during the year 1895. In January, 1896, Gellert was indicted for felony, and, whilst out on bond, again verbally promised to pay the debt. He was subsequently surrendered by his surety, and, upon being again released, in February, 1896, departed, going, as it was supposed, to Texas, and has not since been seen in Louisiana. Thereafter, in May, 1899, J. B. Watkins, J. F. Switzer, and M. Summerfield, appearing as the holders of the bond and coupons in question, and as the beneficiaries of the mortgage securing the same, obtained from the district court for the parish of Acadia an order for the seizure and sale of the property mortgaged. In their petition they alleged that said mortgage had been executed by "Henry Gellert. then a resident of the parish of Calcasieu, * * * but now a resident of Brenham, Texas," and they prayed that a curator ad hoc be appointed to represent him. They also alleged that there was due them the fee of their attorneys, and certain moneys for costs incurred and taxes paid, and they prayed "that, after due demand, a writ of seizure and sale do issue * * * directing the sheriff * * * to seize and take into his possession the aforedescribed property, and, after the legal delays, to advertise and sell the same for cash, and without appraisement, and that from the proceeds of sale there be paid to petitioners:

"(1) All costs and charges of this proceeding, including five dollars for copy of act, twenty-five dollars for expenses in the protection and preservation of the rights of petitioners, and ten per cent. attorney's fees on the full amount of said bond, matured coupons, interest on the said bond from July 1, 1894, at eight per cent. per annum until paid, and interest on the past-due coupons at eight per cent. per annum from the date of their respective maturities until paid.

"(2) The sum of $34.84 in reimbursement of taxes paid by petitioners.

"(3) The amount of said past-due coupons, the full sum of two hundred and sixteen dollars, with eight per cent. interest per annum from their respective maturities until paid, and the full sum of six hundred dollars, the principal of said bond, and the interest thereon from July 1, 1894, to date of sale, and all the balance of said adjudication, if any, in cash, be paid to defendant or his assignee."

The curator ad hoc was accordingly appointed, took the oath, and received the notices required by law. The writ issued as prayed for, directing the sheriff to seize and sell the mortgaged property to pay and satisfy the claim of the plaintiffs as stated in their petition; and on July 8, 1899, the sale was made, the property (described as "Lot No. 1, or north half of fractional section 41, Township number 9 South, of Range number 2 West, Louisiana Meridian, and containing 116 $52/100$ acres, more or less, according to the official plat of the survey of said land, excepting 3 acres used as a burial ground") being adjudicated to the plaintiffs for $550, which was credited on their writ.

Upon June 1, 1900, the purchaser sold the land so acquired to the Watkins Land Company, which company, upon April 20, 1901, sold it to F. S. Spencer, who, upon April 27, 1901, sold it to Stanley A. Spencer & Co., who, upon February 8, 1902, sold it to the Jennings-Heywood Oil Syndicate.

In the meanwhile—i. e., upon January 10, 1894—Gellert had executed an act of conveyance in globo of a number of tracts of land, including that here in question, without, however, stating the acreage, together with wagons, mules, horses, cows, all his farming implements, an engine and sawmill, to F. Schultz, who, without requiring the production of a certificate, assumed all the mortgages recorded against said land; and upon April 31, 1894, by an act to which Gellert was a witness, Schultz sold the same property, by the same description, to one Paul Goetz, who, it appears, was a resident of the county of Wichita, Tex., and who also assumed the mortgages, without requiring a certificate. Upon August 11, 1900, the property here in question appears to have been sold, as belonging to Goetz, for the taxes of

.1899, to H. J. Fisher. Upon July 25, 1901, it was redeemed by Valentine Huber (plaintiff herein), "agent of Paul Goetz, per F. Huber," and upon August 3, 1901, it was reconveyed by Fisher to Goetz, the latter being represented, as before, by Valentine Huber. Upon September 26, 1901, by an act executed in Wichita county, Tex., and which contains an express disclaimer of all warranty save as against the acts of the vendor and those claiming under him, Goetz conveyed said property to Valentine Huber, and upon June 12, 1902, another act was executed by Goetz, containing the warranty which had been thus withheld. Upon the other hand, it is shown that the property in question was assessed for the year 1899 to "J. B. Watkins and others," and that the taxes for that year were paid by them January 4, 1900.

Upon June 20, 1902, the present action was brought by Valentine Huber against J. B. Watkins, J. F. Switzer, and M. Summerfield, the original adjudicatees at the sale by the sheriff in the foreclosure proceedings, and against the Jennings-Heywood Oil Syndicate, who, by mesne conveyances, have acquired from said adjudicatees; the plaintiff predicating his attack upon the mortgage under which the property was sold and upon the sale, upon the following propositions, to wit:

(1) That the mortgage was void because never accepted by the mortgagee, because the property was insufficiently described, and because it was not given for a fixed sum, but included taxes and expenses which might thereafter be paid and incurred by the mortgagee, without specification of the amounts.

(2) That, if said mortgage ever had any legal existence, it had ceased of effect, for the reason that the bond and coupons, the payment of which it purported to secure, were prescribed when the proceeding to foreclose was instituted.

(3) That the entire proceeding under which the property was sold was illegal and void because the order for the writ bears no date, and it is not shown whether it was made in open court, or chambers, or within the territorial jurisdiction of the court; because the appointment of the curator ad hoc to represent the mortgagor "without any proof and upon insufficient and unverified allegations" was unauthorized, and no notice was given to the owner; and because the writ issued without authentic proof as to the identity of the obligations sued on with those to secure the payment of which the mortgage purports to have been executed, or of the indebtedness of the mortgagor with respect to the items of taxes and expenses.

(4) That the sheriff took no possession and gave none to the adjudicatees; that the property continued to be assessed to Goetz was sold for the taxes of 1899 to one Fisher, and was redeemed by plaintiff for Goetz, in 1901; and that it was unoccupied until February, 1902, when the Jennings-Heywood Oil Syndicate took unlawful possession of the whole tract, including the three acres used for burial purposes.

Plaintiff prays that said mortgage and sale be annulled, and that he be recognized as the owner of the property, including the three acres mentioned.

### Opinion.

The price at which the property was adjudicated having been merely credited upon the writ under which the sale was made, the case does not fall within the rule requiring a tender of the price paid as a condition precedent to an attack upon a judicial sale. Houston v. Childers et als., 24 La. Ann. 473.

1. The act of mortgage recites that the bond and coupons were "delivered to F. Huber, who hereby acknowledges the receipt thereof, for delivery by him to" the party named as mortgagee. Moreover, the mortgage executed in 1889 was assumed by plaintiff's authors, Schultz and Goetz, in January and April, 1894, as part of the price of the property, and thereafter the holders of the bond and the coupons (also designated as mortgagees) judicially accepted the mortgage by instituting suit to enforce it. The acceptance was therefore amply sufficient. Balch v. Young, 23 La. Ann. 273; Bank v. Ferry, 32 La. Ann. 310; Roberts v. Bauer, 35 La. Ann. 454; Allen, West & Bush v. Whetstone et al., Id. 850. In Roberts v. Bauer, supra, it was objected that the mortgage there in question was invalid because the property was described as "un vaste terrain a l'encoignure des rues Orleans et Bourbon," and this court, holding that the objection was not good, said: "We find but two cases in which a mortgage has been held invalid on this ground, and in both there was a total want

of description"—citing Edwards v. Caulk, 5 La. Ann. 123; Keiffer v. Starn, 27 La. Ann. 282; the doctrine recognized being that a description which leaves no doubt as to the identity of the property is sufficient. In the case at bar the description is that given by the government of a fractional half section, and whether it contains 89 acres, more or less, or 116.52 acres, more or less, is immaterial; nor does it matter that there is excepted from the mortgage "three acres used as a burial ground," since no reason suggests itself why the three acres so excepted should not be identified by that description. To the objection that the amount intended to be secured by the mortgage was not fixed, the answer is that quoad the principal debt and the interest thereon it was fixed, whilst the costs of the proceeding to enforce the mortgage, regulated by law, were to be and were taxed as in any other suit. Umrich v. Grow, 24 La. Ann. 308. Whether there was authentic proof of the taxes paid, and whether that question can be raised at this time and in this suit, is another matter.

2. It is not pretended that the mortgage was prescribed at the date of the institution of the suit to enforce it, and, whilst the bond appeared upon its face to be prescribed, it was not the duty of the court to supply the plea of prescription, and the plaintiff's remedy, if any he had, was by injunction. Civ. Code, art. 3463; Code Prac. art. 737; Gillis v. Carter, 29 La. Ann. 698; Munholland v. Scott, 33 La. Ann. 1045. Moreover, it is abundantly shown that such apparent prescription had been interrupted by the acknowledgments and promises of the debtor.

3. It is true that the order for executory process bears no date, but the petition was filed May 20, 1899, and the writ, purporting to have been issued pursuant thereto, is dated May 22, 1899. Whether the order was signed in or out of court, before or after the filing of the petition, is immaterial. The presumption is that it was signed at the time and place contemplated by law, and nothing to the contrary is shown. Learned v. Walton, 41 La. Ann. 233, 6 South. 125.

As was said in Frost v. McLeod, 19 La. Ann. 80, article 737 of the Code of Practice, under which the appointment of the curator ad hoc was made, "simply provides that if the debtor who has granted the mortgage is absent, and not represented in the state, the judge, at the request of the plaintiff, shall appoint him an attorney, to whom notice of demand shall be given in the manner directed, and contradictorily with whom the seizure and sale shall be prosecuted. It does not say 'on proof' of the absence, and we are not informed of any law requiring such antecedent proof."

That the mortgage debtor in the instant case was absent from the state when the executory process issued is not denied, and it is not alleged in the petition that he was represented. Toward the close of the trial, however, the plaintiff discovered that before leaving he had given a power of attorney to a shoemaker in Lake Charles, and a witness was introduced who testified that he had, in 1896, informed one Wentz, a clerk either in the employ of the Watkins Banking Company or the Watkins Land Company, of that fact, and it was also shown that the power of attorney had been recorded in the conveyance office. Testimony in rebuttal offered on behalf of the defense was excluded, but it was not shown that either the Watkins Banking Company, the Watkins Land Company, or the holders of the bond and coupons sued on, who instituted this proceeding more than three years later, were ever informed of those facts. The curator ad hoc was therefore properly appointed. If this be not so, then executory process can never be invoked against an absent debtor without his consent, since the creditor can never be certain whether he is represented or not.

Plaintiff's author bought the property in question subject to a recorded mortgage containing the pact de non alienando, and was bound to know that the holder was entitled to enforce his rights as if the original owner was still in possession, and that no notice need be given to a third possessor. Truxillo v. Delaune, 47 La. Ann. 10, 16 South. 642; Thompson v. Whitbeck, 47 La. Ann. 49, 16 South. 570; Fleitas v. Meraux, 47 La. Ann. 241, 16 South. 848.

The act of mortgage runs in favor of Henry Dickinson and of any future holder or holders of the bonds and coupons, whereas the bond recites that the money was borrowed from the J. B. Watkins Land Mortgage Company; but the bond bears date July 1 and the mortgage July 19, 1889. Non constat, therefore,

but that the original loan was made by the Watkins Company at the date of the bond, and repaid, and that the mortgage was given to secure a loan subsequently obtained from Dickinson. At all events, it is quite certain that Gellert obtained the money; that upon July 19, 1889, he owed it to the holders of the bond and coupons, which were then and there produced and identified by description and number and by the paraph of the notary; and that the mortgage was given to secure that debt and no other.

An order of seizure and sale is not, it is true, a judgment for all purposes and in the full sense of the term, but it is a decree of a court in aid of the execution of an obligation, which, by law, is given the effect of a judgment quoad the particular property to which it refers; and it is a judgment in so far that an appeal will lie therefrom for the review of the question of the sufficiency of the evidence upon which it is based, whilst the remedy, where other objections are relied on, is by injunction. Harrod v. Voorhies' Adm'x, 16 La. 254; Dodd v. Crain and Another, 6 Rob. 58; Code Prac. art. 739. Under these circumstances, where the party proceeded against neglects either to appeal or to enjoin, and allows the property to be sold and resold to third persons, he cannot thereafter attack the proceedings, and the title thus acquired, in an action of nullity predicated upon matters which might have been presented by appeal or injunction; and a person claiming under him, by virtue of a conveyance made several years later, is in no better position. Robichaud v. Nelson, 28 La. Ann. 578; Munholland v. Scott, 33 La. Ann. 1045.

4. The return of the sheriff shows that he took possession of the property, sold it, and made title to the adjudicatees. The plaintiff alleges that the property was then unoccupied, and that the defendant, claiming under the adjudicatees, thereafter took actual possession. The property, though assessed for the year 1899 in the name of Goetz, was also assessed to the adjudicatees at a sale under executory process, and they had paid the taxes before the sale to Fisher, which was therefore void.

As appears from the statement which precedes this opinion, the amount realized from the sale by the sheriff was less than the principal of the bond sued on, though there is no evidence tending to show that it was less than the then value of the property; nor does it appear that the mortgagor or his transferees sustained any injury by reason of the sale; nor is there any evidence to support the allegation that the adjudicatees or their vendees have taken possession of the three acres reserved for burial purposes. For these reasons the judgment appealed from is affirmed, at the cost of the appellant.