200 So. 306

**DIXON et al. v. FEDERAL LAND BANK OF NEW ORLEANS.**

No. 35884.

Jan. 6, 1941.

Rehearing Denied Feb. 3, 1941.

[1] 196 La. 926.

[2] 196 La. 936.

A. B. Parker and L. F. Grigsby, both of Minden, and Mabry & Carstarphen, of Shreveport, for plaintiffs and appellants.

Harold Moses and T. H. Hedgepeth, both of New Orléans, and Clifford E. Hays, of Minden, for defendant, appellee.

ODOM, Justice.

This is a suit to have annulled and set aside a public sale of certain land in Webster Parish, made by the sheriff under executory process. The plaintiffs are the widow in community and the heirs of Henry Dixon. The defendant is the Federal Land Bank of New Orleans, the adjudicatee of the property. The sale was made at public auction and took place on October 21, 1933. This suit was filed on

June 20, 1939, or five years and eight months after the sale was made.

The defendant pleaded the prescription of two and five years, under Article 3543 of the Revised Civil Code, as amended by Act 231 of 1932, page 732. The trial judge held that such rights as plaintiffs may have had to set the sale aside had prescribed, and dismissed their suit. They appealed from the judgment.

Plaintiffs' petition and the annexed documents show that on August 1, 1925, Henry Dixon borrowed $2,500 from the Federal Land Bank of New Orleans, and to evidence the indebtedness gave his note for that amount. To secure the note he mortgaged 300 acres of land in Webster Parish, and his wife signed the mortgage with him. The property mortgage belonged to the community of acquets and gains which existed between Henry Dixon and his wife.

The mortgage was passed before a notary public and two witnesses, and the debtor acknowledged the debt for which he gave it. It was an act importing a confession of judgment. Code of Practice, Article 733, as amended by Act 171 of 1932, page 547.

The act of mortgage contains the following stipulation:

"And the said mortgagor hereby confesses judgment in favor of the mortgagee herein, or any future holder or holders of this note, * * * and does, by these presents, consent, agree and stipulate that, in the event of said note, or any installment thereon, not being promptly paid at maturity, * * * it shall be lawful for, and the mortgagor hereby authorizes the then holder or holders of this note, without making a demand or putting in default, a putting in default being hereby expressly waived, to cause all and singular the property herein mortgaged and hereinabove described, to be seized and sold, after due process of law."

The act of mortgage further stipulates that, in the event the holder or holders of said note should not desire to resort to executory process, "the said mortgagor consents, agrees and stipulates that the then holder or holders of said note may file suit in any court of competent jurisdiction and obtain judgment immediately by virtue of the confession of judgment herein contained, said mortgagor waiving citation and all legal delays, * * * waiving the benefit of any and all laws or parts of laws relative to the appraisement of property seized and sold under executory or other legal process."

Henry Dixon died intestate at his home in Webster Parish on September 8, 1930. There survived him his widow, Belle Patterson Dixon, and 11 children of the marriage, all majors, who were duly recognized as widow and heirs, respectively, by an order of court.

On September 1, 1933, the Federal Land Bank, the mortgagee and the then holder of the note, instituted executory proceedings via executiva against Belle Patterson Dixon, "surviving spouse in community of Henry Dixon", pursuant to the provisions of Act 57 of 1926. It alleged that the balance due on the $2,500 note was $2,178.-

10, plus interest and attorney's fees. Paragraph 13 of the bank's petition reads as follows:

"That petitioner is informed and believes, and so believing avers that the defendant herein is a resident of Fort Benton, Georgia, and that she is not represented in the State of Louisiana, and it is therefore necessary that an attorney at law be appointed curator ad hoc to represent her in these proceedings."

The judge of the district court signed an order which reads as follows:

"Let executory process issue herein as prayed for and according to law, and let R. F. Langston, Attorney at law, be and he is hereby appointed curator ad hoc to represent the absent defendant, Belle Patterson Dixon (also known as Bettie Dixon) in these proceedings."

Plaintiffs in this suit alleged—and it is conceded by all parties—that the executory proceedings were conducted contradictorily with the attorney appointed to represent the surviving widow in community of Henry Dixon.

Plaintiffs alleged that the foreclosure proceedings, the writ of seizure and sale under which the sheriff acted, and the sheriff's sale and deed were all null, void, and of no effect for the following reasons: That no legal notice of demand for payment or notice of seizure or notice of any kind was served on either Belle Patterson Dixon, the surviving spouse, or on any of the heirs of Henry Dixon, deceased; that no valid judgment could be rendered against the surviving spouse of Henry

Dixon "without personal service on her individually and as representative of said community estate", and that the order of executory process and all proceedings thereunder, having been issued in a proceeding conducted contradictorily with a curator ad hoc, were null and void; that the appointment of an attorney to represent the surviving spouse in community was illegal because she was not an absentee but was a resident of the State of Louisiana at the time the proceedings were had, and that no valid seizure was made of the property by the sheriff under the writ of seizure and sale.

Counsel for plaintiffs did not allege, nor have they suggested in oral argument or in brief, that all such notices as the law requires in executory proceedings were not in fact given and served on the attorney appointed by the court to represent Belle Patterson Dixon, the surviving spouse in community of Henry Dixon. But they alleged and argued orally that, even if it be conceded that the foreclosure proceedings were properly brought against her, as the surviving widow in community, under Act 57, page 71, of 1926, such notices and services should have been made upon her personally because there is no law which provides for substituted services in such cases.

We find no merit in this argument. Act 57 of 1926 provides that, in all proceedings in which executory process is resorted to in order to enforce payment of notes representing a debt of the community and secured by mortgage importing a confession of judgment on community property, where

either the husband or the wife is dead at the time such proceedings are instituted, "said proceedings shall be carried on against said surviving spouse alone".

In so far as such a proceeding is a suit, the surviving spouse is the person sued. Such spouse is the person designated by the statute to stand in judgment for the unliquidated community.

In McCoy v. Hunter, 167 La. 1032, 120 So. 767, 769, the court said:

"The proceeding by executory process, on a community debt, against community property, is essentially one in rem against such property. The foregoing being true, it is not a violation of the due process clause of the Constitution of the United States for the Legislature to provide that such a proceeding may be conducted against the survivor in community alone."

The survivor in community being the person against whom such proceedings may be conducted, the appointment of a curator ad hoc to represent such spouse, if absent, is authorized by Article 116 of the Code of Practice, which provides that, if the person intended to be sued is absent and not represented in the state, a curator ad hoc must be appointed to represent such absentee. And Article 737 of the Code of Practice provides that, if the debtor who has granted the privilege or mortgage is absent and not represented in the state, the judge at the request of the plaintiff shall appoint an attorney to represent the debtor. These rules apply where the proceeding is brought against the surviving spouse in community, who is the person designated by the statute to represent the community in such proceedings.

Another complaint made by counsel for plaintiffs is that no notice of any kind was served on the heirs of Henry Dixon, who was the mortgagor. The reason there is no merit in this point is that Act 57 of 1926 says that in proceedings of this kind "it shall not be necessary to make the heirs of the deceased spouse parties to said proceedings", but shall be lawful to proceed against "said surviving spouse alone".

The judge who issued the order for executory process in this case appointed a local attorney to represent the surviving spouse in community, against whom the proceeding was brought. The appointment was made because the plaintiff in the executory proceeding alleged on information and belief that she was a resident of the State of Georgia and that she was not represented in this state. The attorney who represented the foreclosing creditor, and who prepared and presented the petition, made affidavit before a notary public that all the allegations contained in the petition were true and correct to the best of his knowledge and belief.

But counsel for plaintiffs argue that the appointment thus made was illegal and absolutely void because the surviving spouse was not then absent from the state. No oral testimony was adduced at the trial. The case was submitted on the pleadings and documentary evidence alone. Plaintiffs alleged that the surviving spouse was present in the State of Louisiana at the time the executory proceedings were carried on contradictorily with the curator

ad hoc. But they did not allege that either the widow or any of the heirs of Henry Dixon were living on, or were in possession of, the mortgaged property at the time. According to plaintiffs' petition, the widow was then living in Webster Parish. For the purpose of passing on the plea of prescription, which is the only point here involved, we accept as true plaintiffs' allegations that the surviving spouse was present in the state when the foreclosure proceedings took place.

■■■ Even so, the appointment of the attorney to represent her was not absolutely null and void. The judge had before him the affidavit of the attorney for the foreclosing creditor that she was absent from the state. The judge was not authorized to call for proof of her absence before making the appointment. Article 737 of the Code of Practice provides that, if the debtor is absent and not represented in the state, the judge at the request of the plaintiff shall appoint an attorney to represent such debtor. This article of the Code does not say that the appointment shall be made on proof that the debtor is absent or cannot be found. It is true, of course, that, if the debtor is present in the state and can be found, the appointment of an attorney to represent him in foreclosure proceedings is improper; but the appointment of the attorney in such cases is not absolutely null merely because the debtor is present, where the appointment is made upon the sworn allegation of the attorney for the foreclosing creditor that the debtor is absent.

In the case of Monition of John Hall v. F. E. Laurence & Husband, reported in 21 La.Ann. 692, property belonging to Mrs. Laurence and husband was sold under executory process via executiva, and Hall, the purchaser, brought monition proceedings to have his title confirmed. Mr. and Mrs. Laurence opposed the confirmation of the title on the ground that there was no necessity shown for the appointment of a curator ad hoc to represent the parties sued because their absence from the state at the time the property was sold was not sufficiently established by positive and competent evidence. The court disposed of this objection by saying:

"The petition of the plaintiffs in the executory process averred that Mrs. Laurence and her husband resided somewhere in New York or New Jersey, and were absent from Louisiana, and not represented therein. We deem this sufficient." Citing Frost v. McLeod, 19 La.Ann. 80.

In the McLeod case, an attorney was appointed to represent the defendant in executory proceeding upon the allegation that the debtor was absent. The attorney thus appointed appealed from the order of seizure and sale, the ground of complaint being that there was no proof that the defendant was absent and not represented in the state. It was held that Article 737 of the Code of Practice, under which the appointment of an attorney was made, does not require the plaintiff to make oath of the fact of absence. The court said:

"The article in question simply provides that, if the debtor, who has granted the

mortgage, is absent and not represented in the State, the Judge, at the request of the plaintiff, shall appoint him an attorney, to whom notice of the demand shall be given in the manner directed, and contrarily with whom the seizure and sale shall be prosecuted. It does not say on proof of the absence, and we are not informed of any law requiring such antecedent proof."

In Huber v. Jennings-Heywood Oil Syndicate, 111 La. 747, 35 So. 889, it was held that:

"In a proceeding via executiva upon an act of mortgage containing the pact de non alienando, the allegation that the mortgagor resides in another state, coupled with a request to that effect, is sufficient to justify the appointment of a curator ad hoc to represent such mortgagor."

The above quotation is from the syllabus, which is in accordance with the ruling of the court. In that case the court cited with approval Frost v. McLeod, 19 La.Ann. 80, and quoted therefrom the paragraph which we have quoted hereinabove.

The case of Wheeler v. Britton, 134 La. 63, 63 So. 624, was a suit for separation from bed and board brought by the husband against his wife. The husband alleged that his wife was an absentee and prayed for the appointment of a curator ad hoc to represent her, but did not make oath that his allegation as to his wife's absence was true. The court held that the appointment of a curator ad hoc was proper, even though plaintiff's petition was not sworn to. While that case had no reference to foreclosure proceedings, the

court considered that the main point involved there, which was whether antecedent proof was necessary in order to warrant the appointment of the curator ad hoc, was the same as that involved in the cases of Frost v. McLeod, Monition of Hall v. Laurence, and Huber v. Jennings-Heywood Oil Syndicate, supra, each of which cases was cited with approval.

In Abbott v. Pratt, 144 La. 741, 81 So. 296, the notice of demand or order of seizure required by law to be served upon the debtor in executory proceedings via executiva was given to the sheriff, and on the following day he made return that "after diligent search and inquiry" he had been unable to find the debtor or anyone legally authorized to represent her, but that he had been "credibly informed that she was now residing in Memphis, Tenn." Thereupon the court appointed a curator ad hoc to represent the debtor, contradictorily with whom the executory proceedings were conducted.

On original hearing it was held that the returns made by the sheriff were not evidence of the facts recited by him therein, and therefore there was no proof of the debtor's absence, and, since there was none, the appointment of the attorney was invalid and the sale was null.

A rehearing was granted, and on rehearing it was held "that the situation is in no wise different to what it would have been had the plaintiff in the foreclosure proceedings, in the first instance, presented to the court a petition alleging the absence of the mortgagor, and praying for the appoint-

ment of a curator ad hoc or attorney to represent him."

And it was specifically held by the court that:

"It was not required that the absence of the mortgage debtor should be disclosed by authentic evidence, but the mere averment of his absence was sufficient to authorize the court to make the appointment." Citing Frost v. McLeod, 19 La.Ann. 80.

These cases definitely and firmly establish the principle that, in foreclosure proceedings via executiva under a mortgage importing a confession of judgment, the judge to whom the application to foreclose is presented may and should appoint an attorney to represent the debtor where the foreclosing creditor alleges that the debtor is absent from the state and the application for such appointment is made on that ground. The order making the appointment is not absolutely null merely because it subsequently develops that the debtor was in fact present in the state at the time. And, because this is true, it follows necessarily that foreclosure proceedings conducted contradictorily with an attorney thus appointed and a public sale of the mortgaged property made under such proceedings are not absolutely null and void "ab initio", as plaintiffs contend.

Whether the mortgage debtor could, within a reasonable time and on proper application, have the sale made under such circumstances set aside is a question not before us, and we do not decide it. But what we hold is that executory proceedings via executiva and a sale of mortgaged property made thereunder, in a manner disclosed by the record in this case, are not absolute nullities. On the face of the papers presented, the requisites of the law were complied with.

◼ We hold further that, after the expiration of the prescriptive periods fixed in Article 3543 of the Revised Civil Code, as amended by Act 231, page 732, of 1932, legal proceedings of this kind and public sales made thereunder cannot be stricken down because of such irregularities as are here complained of. The most, or the worst, that can be said of such irregularities is that they are "informalities", as that term is used in the Code. The above article of the Code, as amended, reads as follows:

"That any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof."

◼ This article of the Code is, in a sense, a statute of repose, intended to quiet and give stability to land titles and to create confidence in judicial sales. Munhol-

land v. Scott, 33 La.Ann. 1043. In the case at bar, the suit attacking the executory proceedings and the sale made thereunder was filed five years and eight months after the sale was made, or after the longest period of prescription mentioned in the Code, as amended, had expired.

■ We hold that such irregularities as constitute the basis of plaintiffs' attack in this case have been cured by prescription, which was especially pleaded by defendant. This ruling is supported by the following cases: Abbott v. Pratt, 144 La. 741, 81 So. 296, on rehearing; Ring v. Schilkoffsky, 158 La. 361, 104 So. 115; Morris v. Foster, 192 La. 996, 189 So. 601; Langford v. Spencer, La. Court of Appeal, Second Circuit, 192 So. 753.

Plaintiffs did not allege that the foreclosing creditor intended to perpetrate a fraud by applying for the appointment of an attorney to represent the surviving spouse in community. They merely alleged that the attorney for the creditor knew, or should have known, that she was residing in the Parish of Webster, where the property is situated and where the proceedings were conducted.

Plaintiffs' petition is quite lengthy, and we have read it with the greatest of care. We find that it was not alleged that the widow and heirs of Henry Dixon were living on the property at the time the foreclosure proceedings were conducted, nor was it alleged that they then had, or since have had, possession of it. It was alleged, however, that defendant was in possession of the property when the suit was filed.

As to residence, it was merely alleged that the surviving spouse was living in the Parish of Webster, but it was not stated where.

Counsel for plaintiffs cite and strongly rely on the case of Reid v. Federal Land Bank of New Orleans, 193 La. 1017, 192 So. 688. That was a case where executory proceedings were conducted against the succession of a person who was alleged to be deceased but who in fact was living at the time. We held that the proceedings were null. But that case has no application to the one at bar. The question of prescription was not there raised.

We are not impressed with counsel's argument that the equities in this case are with the plaintiffs. They knew that the mortgage indebtedness was long past due and unpaid. They did not allege that, if notice had been given them personally, they would or could have paid the debt. While they alleged that they were residing in Webster Parish at the time the foreclosure proceedings were conducted and have resided there ever since, they did not allege that they then lived on, or had possession of, the property, or that they have since lived on, or possessed, it. The fact that such allegations were not made, and the further fact that the foreclosing creditor alleged that the surviving spouse in community was an absentee, indicate that the property may have been abandoned.

For the reasons assigned, the judgment appealed from, sustaining the plea of prescription, is affirmed at plaintiffs' costs.

O'NIELL, C. J., does not take part.