OYERTON, J.
 

 This is a suit to force the defendant S. D. Hunter to comply with a written agreement to lease from plaintiff the mineral rights on certain land in Richland parish for $4,200 cash. Pending an investigation into the title to the land upon which the lease was to be accepted if the title should prove to be valid, a copy of the lease and the amount to be paid for it were deposited in escrow in the Central Savings Bank & Trust Company. The bank was cited as a defendant herein for the purpose of having it ordered to pay to plaintiff the amount deposited in escrow.
 

 The land that it was agreed to lease was acquired by plaintiff at sheriff’s sale. This sale was made in the execution of a writ of
 
 *1035
 
 seizure and sale, which issued from an order, granting executory process to foreclose a mortgage, executed by William Scott on the land, which it was later agreed to lease. The mortgage foreclosed was one by notarial act, and recites that William Scott is a married man, living in community with his wife, Mary Scott. William Scott died after the mortgage was executed, but before executory process had issued, leaving several children, all of whom were majors.
 

 The reason why I-Iunter refused to accept the lease and authorize the payment of the consideration for it was because he did not consider that plaintiff had acquired a merchantable title to the land concerning which the agreement was made. The reasons why Hunter did not consider that plaintiff’s title to the land was merchantable may be summarized Briefly as follows: (1) Because the order for executory process was granted by the clerk of court, who was without authority to grant it, for the reason that section 7 of Act 204 of 1924, which purports to grant clerks of court such power, is unconstitutional ; (2) because the service of legal process in the foreclosure of the mortgage was made on the widow in community alone, instead of upon the widow and each of the legal heirs of William Scott, and because Act 57 of 1926, which purports to authorize such service, is unconstitutional; and (3) because, assuming that the Act of 1926 is valid, there was not attached to the petition upon which the order for executory process was granted any authentic evidence to authorize the granting of the prayer of the petition for service of process upon the widow in community alone, in that there was no such evidence showing that the indebtedness was community indebtedness or that the land mortgaged was community property.
 

 The' order granting the executory process was not signed by the district judge, but by the clerk of the district court. The authority relied upon, as vesting the power in clerks to issue such orders, is Act 204 of 1924. The purpose of this act is to vest authority in the clerks of court throughout the state, the parish of Orleans excepted, to grant orders in various matters. Section 7 of the act reads:
 

 “They [referring to the clerks] shall have the power to issue orders of executory process and to sign orders for preliminary medical examination for insanity.”
 

 The objection urged to this section, so far as it relates to the granting of orders for ex-ecutory process, is that it vests in the clerks of court a power properly belonging to the judiciary department of government — that is, that it attempts to authorize clerks to render and sign judgments.
 

 There are two provisions in the Constitution of 1921 that must be considered in passing on the question here raised. One is sections 1 and 2 of article 2; the other is the second paragraph of section 66 of article 7. The first provision reads as follows:
 

 “Section 1. The powers of the government of the State of Louisiana shall be divided into three distinct departments — legislative, executive, and judicial.
 

 “Section 2. No
 
 one
 
 of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.”
 

 The second provision, referred to, reads:
 

 “The Legislature shall have power to vest in clerks of court authority to grant such orders and to do such acts as may be deemed necessary for the furtherance of the administration of justice; and in all cases the powers thus vested shall be specified and determined.”
 

 An order granting executory process is not, in a true sense, a judgment. It decides no issue. It adjudicates to the plaintiff only what is secured to him by his authentic act
 
 *1037
 
 of mortgage, and does not deprive him of any right so secured. It is rendered ex parte, and cannot support a plea of res judicata, or one of lis pendens. The only element of a judgment in such an order is the right of appeal. Mitchell, Tutor, v. Logan, Sheriff, 34 La. Ann. 998, 1003. See, also, Harrod v. Voorhies’ Adm’x, 16 La. 254, 256; Folger v. Roos, 40 La. Ann. 602, 604, 4 So. 457, 458. In the case last cited, it was said:
 

 “A decree for executory process is not a judgment in any sense of the word, within the meaning of the authorities cited, for it decides nothing, no more than an order for a conservatory writ of any description. It has been held to be a judgment only, so far that an appeal lies from it in a proper case. * ‡
 

 “It is therefore strictly no judgment. It is simply an ex parte order in rem, granted at chambers, without any previous hearing, or notice to the ostensible owner of the property, directed to be seized and sold, to satisfy the debt acknowledged in the authentic form.”
 

 We see no less reason why clerks of court may not be authorized by the Legislature to grant orders of executory process than to homologate proceedings of family meetings, when their homologation is not opposed. It was held under the Constitution of 1879, which, as relates to the powers that may be vested in the clerks of court, is the same as the corresponding power in the present organic law, that power vested in the clerks to homologate such proceedings was not violative of the Constitution. Lemoine v. Ducote, 45 La. Ann. 857, 860, 12 So. 939. This ruling was affirmed in Holliday v. Hammond State Bank, 118 La. 1000, 43 So. 656. The order, in the case last cited, was characterized as being of a quasi judicial nature.
 

 In our view, the granting of the power, under consideration, is not violative of the Constitution. The power conferred is merely quasi judicial in its nature.
 

 We shall next consider the constitutionality of Act 57 of 1926, authorizing the service of process, under certain circumstances, on tire surviving spouse in community. It is urged that the act is unconstitutional, because it permits, where the deceased spouse leaves heirs, the taking of the property of the heirs without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. The act, omitting its repealing clause, reads as follows:
 

 “That in all proceedings in which executory process ‘via executiva’ is resorted to to enforce the payment of a note or notes representing a debt of the community, and secured by mortgage importing a confession of judgment on community property, where either the husband or wife was dead at the time of the institution of such proceedings, it shall not be necessary to make the heirs of the deceased spouse' parties to said proceedings, but it shall be lawful to make service of all process, citations, notices of demands, and all necessary services to be made in connection therewith upon the surviving spouse in community, and said proceedings shall be carried on against said surviving spouse alone.”
 

 The heirs inherit the interest of the deceased spouse in the community subject to the payment of its debts. As to how the community shall be settled upon its dissolution by the death of one of the spouses is a matter resting within the discretion of the Legislature. There is no constitutional reason why, if the Legislature should see proper, it could not authorize the surviving spouse, as such, to liquidate the community, or matrimonial partnership, and distribute the remainder of its assets among those entitled to the residue. Nor is there any constitutional reason why, if the Legislature deems proper, it cannot authorize the surviving spouse to stand in judgment for the community. The proceeding by executory process, on a community
 
 *1039
 
 debt, against community property, is essentially one in rem against such property. The foregoing being true, it is not a violation of the due process clause of the Constitution of the United'States for the Legislature to provide that such a proceeding may be conducted against the survivor in community alone. The proceeding authorized, after all, is only a method of liquidating, or partiaUy liquidating, the community. Landry, Adm’r, v. Grace, No. 29195, 120 So. 770.
 
 [1]
 

 The remaining question to be decided is the alleged failure to attach to the petition for executory process authentic evidence showing that the debt, secured by the mortgage, foreclosed upon, was a community debt, and that the land mortgaged was community property. The notarial act of mortgage shows that, when it was executed, the mortgagor was living in community with his wife, but the mortgage does not show when the debt was contracted, or when the community began, or when the land was acquired. Since there was nothing to show that the debt secured was a community debt and that the land mortgaged was community property, when the application was presented to the clerk, except the allegations of the petition, supported by the affidavit attached thereto, it may be said that these facts were not made to appear by authentic evidence. Assuming, however, without so deciding, that authentic-evidence of these facts should have been attached to the petition for executory process, still the sale of the property, under that process, is an accomplished fact, and, being so, the courts would not be justified in setting aside the sale, in whole or in part, if it appear that the debt was, in fact, a community debt, and that the 'property was, in fact, community property, for it is not every technical defect in a sale, .made under executory process, that will have the effect of avoiding the sale. It is conceded, in this case, as appears from the agreed statement of facts in the record, that the debt was a community debt and that the property mortgaged was community property. Therefore this ground for refusing to accept the lease should not be sustained.
 

 It is also urged b-y the defendant Hunter that Act 57 of 1926, providing for service on the surviving spouse, is' not applicable to the proceeding had by executory process, because the mortgage was granted and the mortgagor died before the act became effective, and therefore to hold that the act is applicable to the foreclosure of the mortgage would give to the act a retrospective effect. The facts upon which this contention rests are correct; but the act provides that it shall apply when either the husband or the wife is dead at the time of the institution of the ex-ecutory proceeding. As to whether the act is applicable only to mortgages executed after the act became effective, the answer is no. The act is remedial and applies to the foreclosure of mortgages executed prior to its passage as well as to those executed after it became effective, the essential thing being, omitting reference to the community character of the debt and property, that one of the spouses is dead when the proceeding is instituted. The fact that the act applies to mortgages executed before its passage and in that sense is retrospective does not make it unconstitutional, for the act is remedial. Dunning v. West, 51 La. Ann. 618, 622, 25 So. 306.
 

 Our conclusion is that the title to the land, so far as appears, is merchantable, and that Hunter should therefore accept the lease, and that the bank should deliver it to him and pay the $4,200 to plaintiff,. The trial judge so thought.
 

 The judgment appealed from is therefore affirmed.
 

 THOMPSON, J., takes no part.
 

 [1]
 

 Post, p. 1042.