175 So. 571

**CONTINENTAL SECURITIES CORPORA-
TION v. WETHERBEE et al.
(RISINGER, Intervener).**

No. 33504.

Nov. 30, 1936.

On Rehearing April 26, 1937.

Second Rehearing Denied June 21, 1937.

Herold, Cousin & Herold, of Shreveport, for appellant George W. Wetherbee.

Lee, Gilmer & Lee, Lee & Lee, and Mabry & Carstarphen, all of Shreveport, for appellees.

Mabry & Carstarphen, of Shreveport, for Abel Bliss, represented by Mrs. Nettie L. Bliss, testamentary executrix and M. Risinger, intervener.

Hussey & Smith, of Shreveport, and Coleman Lindsey, of Minden, amicus curiæ.

LAND, Justice.

This is a suit for partition by licitation of approximately 8,300 acres of land situated in the parish of Bossier in this state.

Judgment was rendered in the lower court against George W. Wetherbee, defendant, recognizing plaintiff, Continental Securities Corporation, and intervener, M. Risinger, to be owners, in indivision, in the proportion of an undivided one-half each, of all the lands described in plaintiff's petition. The judgment further orders that partition be made by licitation; that all costs be borne by the mass; and that the balance of the proceeds of sale, after payment of costs, be equally divided between plaintiff, Continental Securities Corporation, and M. Risinger, intervener.

From this judgment, defendant George W. Wetherbee has prosecuted a devolutive appeal to this court.

The defendants George W. Wetherbee and Abel Bliss acquired all of this property, except an 80-acre tract, from Simon Hamburg, by recorded deed of date September 10, 1910, and these defendants later acquired this tract also from N. E. Muggah by recorded deed of date February 17, 1913. On June 26, 1923, defendant Abel Bliss sold and conveyed to defendant George W. Wetherbee all of his right, title, and interest in the property; and George W. Wetherbee, at that date, acquired the full ownership of all the property described in plaintiff's petition.

The Continental Securities Corporation alleges the above facts in its petition, and avers that on August 5, 1933, it acquired at sheriff's sale, under executory process, an undivided one-half interest in the entire property in cause No. 11,622 in the district court of Bossier parish, entitled "Continental Securities Corporation v. George W. Wetherbee," being the same Wetherbee, defendant herein.

The Continental Securities Corporation also alleges that defendant Abel Bliss is the owner and holder of a mortgage duly recorded, bearing against the undivided one-half interest in the property described in article I hereof, owned by the said George W. Wetherbee, and should be made a party defendant in order to protect whatever interest he may have in the premises.

Alleging that petitioner and defendant George W. Wetherbee are co-owners, in indivision, in the proportion of an undivided one-half interest each of the entire property, Continental Securities Corporation prays for citation to George W. Wetherbee and Abel Bliss; that petitioner and George W. Wetherbee be recognized as owners in indivision of the property described in article I hereof; that the property be partitioned by licitation, and proceeds of sale be divided between the parties in accordance with their interest therein. In the alternative, petitioner prays for a partition in kind.

(1) In the answer and amended answer of defendant George W. Wetherbee, to plain-

tiff's petition, defendant admits that he acquired all of the property as set forth in plaintiff's petition, but denies that plaintiff acquired any interest by the sheriff's sale therein referred to.

Assuming the position of plaintiff in reconvention, defendant attacks the sheriff's sale, the basis of plaintiff's title, as null and void for the following reasons:

(a) The foreclosure proceedings and the ensuing sheriff's sale went beyond the provisions of the mortgage in not excepting therefrom the right of defendant George Wetherbee, mortgagor, to produce oil from the premises.

(b) The mortgage, and the ensuing sheriff's sale based thereon, covered the entire undivided interest in the property and not merely an undivided one-half interest therein; and

(c) There was no actual seizure of the property by the sheriff preceding the sale.

(2) As to the first ground of attack on plaintiff's title. On September 10, 1910, Bliss and Wetherbee purchased from Simon Hamburg, and from N. E. Muggah on February 17, 1913, approximately 8,300 acres of land in Bossier parish.

Thereafter, on June 26, 1923, Wetherbee bought all the right, title, and interest of Bliss in the property in question (Tr., Vol. 1, p. 93) for $250,000, part of which was paid in cash and the balance on terms of credit. (Tr., Vol. 1, p. 96). To secure the credit portion of the price, a special mortgage and vendor's lien was stipulated "on said property." Tr., Vol. 1, p. 97.

On May 27, 1927, defendant Wetherbee executed a mortgage covering *the entire property* to secure two notes of $50,000 each, later acquired by the plaintiff, Continental Securities Corporation. Tr., Vol. 2, pp. 11, 12.

After describing in detail the property covered by this mortgage, the following clause is contained therein: " * * * together with all buildings and improvements on all the lands described hereinabove of whatever nature and kind, including any and all oil wells, or any interest therein owned by said mortgagor, together with all equipment and appurtenances thereunto belonging.

"It is *specifically* agreed and understood that this act of mortgage *does not, in any way, affect or apply to the oil and/or gas which has been or may be* produced from the above property, and that the said George W. Wetherbee shall have the right to sell said oil and/or gas and to collect and receive the proceeds thereof *free from any lien, privilege, or incumbrance resulting from this mortgage;* and the Standard Oil Company of Louisiana, *or any other* person, firm or corporation which may purchase said oil and/or gas, is hereby authorized *to remit the purchase price to the said George W. Wetherbee.*" (Italics ours.) Tr., Vol. 2, p. 15.

This mortgage was given by Wetherbee to the Commercial National Bank of Shreveport, La. The act of mortgage was prepared by the attorney for the bank, and the notes were later acquired by plaintiff. It is the mortgage which was foreclosed by plaintiff, and plaintiff's title is based on this foreclosure proceeding.

Defendant Wetherbee contends that the mortgage foreclosed did not *in any way* affect or apply to the oil and/or gas which *has been or may be* produced from the above-described premises, and that, in this foreclosure proceeding, plaintiff completely ignored the exception of the oil and gas from the property mortgaged, and proceeded as though this exception did not exist.

Plaintiff, as assignee of the bank, takes the position that the sole purpose of this exception was to enable Wetherbee to sell the oil which he was *then* producing from the property to the Standard Pipe Line Company and receive the price.

But a mere reading of the exception in question shows that its scope is much broader and that more was intended by the parties thereto. The provision in the exception "that this act of mortgage does not *in any way* affect or apply to the oil * * * *which has been or may be produced* from the above described property * * * *," clearly conveys the idea that the mortgage does not *in any way* affect or apply to the oil which *might be produced* from the described lands. It is true, under the established jurisprudence of this state, that the owner of the land or the owner of the mineral rights does not own oil and gas in place; *but he does own the right* "to draw them from the soil and thereby become the owner," as held in the following cases: Frost-Johnson Lumber Company v. Salling's Heirs, 150 La. 756, at page 863, 91 So. 207; Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, at page 165, 95 So. 538; Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666.

Construing the language of the above clause, in connection with the jurisprudence of this state, its import becomes apparent that the parties did not intend that the mortgage should cover or affect the right to produce oil from the premises.

The fact that Wetherbee mortgaged the buildings and improvements on the land and any and all oil wells thereon, together with the equipment and appurtenances thereto belonging shows only, in our opinion, that he intended to mortgage the land and everything thereon. By stipulating that the oil wells were mortgaged, the idea conveyed is that such wells were an improvement on the premises, and that the physical property which went into the wells, namely, the pipe, rigs, etc., was mortgaged.

This general clause in the mortgage describing the property mortgaged is followed immediately by a special clause, specifically stating that Wetherbee did not intend *to mortgage the right he had to produce oil from the premises*. In the face of this special clause, specifically excepting *"the oil which has been or may be* produced" from the property mortgaged, the conclusion drawn by plaintiff that, since Wetherbee mortgaged the oil wells, he must have intended to mortgage his right to produce oil therefrom is clearly a non sequitur.

It follows, necessarily, that plaintiff corporation had no right to foreclose in such a manner as to have the land and the right to produce oil therefrom sold, as though the mortgage covered both. It must be conceded that the holder of a mortgage has no right in a foreclosure proceeding to have adjudicated to him something of great value

which was not included in the mortgage and claim title thereto.

■ The order granting executory process to plaintiff in this case adjudicated to that corporation only what is secured to it by its authentic act of mortgage. Mitchell v. Logan, 34 La.Ann. 998, at page 1002; McCoy v. Hunter, 167 La. 1032, at page 1036, 120 So. 767.

■ There is no confession of judgment behind the seizure and sale of the excepted property in this case. The only judgment is that contained in the authentic act of mortgage, in which the right to produce oil and gas from the premises was specifically excepted. The seizure and sale of property, that is not specifically described in the act confessing judgment, is null and void for the reason that it is the taking of property without due process of law, which is prohibited alike by both State and Federal Constitutions (Const.La.1921, art. 1, § 2; Const. U.S. Amend. 14). There was no error on the part of plaintiff in making this seizure. On the contrary, the seizure was deliberately made, and its validity is zealously asserted here by plaintiff.

In Gusman v. De Poret, 33 La.Ann. 333, cited by counsel for plaintiff, it is held that it is no valid ground of injunction for the defendant in execution that the sheriff has seized property that does not belong to him. Nor is the case at bar a case in which the sheriff has seized property of the debtor in excess of the amount called for by the writ, and recourse must be had for a reduction of the seizure. Nor is the case at bar a case in which the property of a third person has been seized along with that of the debtor, and the seizure and sale must be restrained as to so much of the property as does not belong to the debtor. The property illegally seized in this case belongs to the debtor, but is excepted from the property hypothecated to the creditor in the authentic act of mortgage, and there was no due process of law at all authorizing its seizure.

The chief value of the lands seized consist of the minerals and mineral rights. The land itself is appraised by the experts appointed in the partition proceedings at $3 per acre. The excepted real right of Wetherbee, the mortgagor, to produce oil from the premises, seized by plaintiff in this case, clearly constitutes the actual basis of the value of the lands mortgaged and seized.

(3) The second ground of attack upon plaintiff's title is that the mortgage held by plaintiff covered *the entire* 8,300 acres, less the right to produce oil and gas therefrom, and that plaintiff, as the foreclosing creditor, had no right to proceed against *an undivided half-interest* in the property.

■ It is well settled, under the jurisprudence, that the holder of a conventional mortgage does not have to foreclose against all the property covered by the mortgage, but may proceed against a distinct tract therein included.

But here we have an entirely different case. The position of the foreclosing creditor is that, as the holder of a conventional mortgage, it has the right to proceed against an *undivided* half-interest in the property covered by the mortgage, and the debtor cannot complain.

Plaintiff alleges in its petition that the property is indivisible in kind and must be sold as a whole to effect a partition; that a division of the property will result in a material diminution of its value; that a portion of the property is in cultivation and has buildings and improvements thereon, while a portion of same is in the woods and it is impracticable to make a partition thereof, so as to give to each co-owner in full ownership property equal in value to his half-interest.

Plaintiff secured the appointment of two appraisers, who reported that, because of the character of the land, the timber thereon, and the mineral values thereunder, the tract is indivisible (Tr., Vol. 1, p. 35); and produced witnesses who established to the satisfaction of the court below that the property cannot be handled in separate tracts or divided, because it had a greater value, owing to its timber and mineral rights, as a unit.

The record shows that, in the foreclosure sale, plaintiff, the seizing creditor, purchased an undivided one-half interest in the 8,300 acres of land in question for $8,000 (Tr., Vol. 1, pp. 22, 26); and, after the seizing creditor had acquired this undivided one-half interest, it brought this partition suit, secured judgment thereon, and the entire property was sold to the Lodwick Lumber Company for $82,500 (Tr., Vol. 1, p. 152). In other words, there is a difference between the price brought as to an undivided one-half interest of $33,250.

Under these circumstances, to permit a mortgagee to disregard the terms of the mortgage and to elect, at his will, as to what undivided interest he will proceed to foreclose upon, and have such interest adjudged to himself would, in many cases, amount to an oppression of the debtor and materially harm him.

■ The Supreme Court recognized the principle that a mortgage creditor cannot proceed against an indivisible portion of the mortgaged premises in Stinson v. Lelievre, 22 La.Ann. 191, where syllabus states the rule as follows: "Where three lots of ground lying contiguous to each other in the city of New Orleans, designated as lots Nos. 1, 2 and 3, have been specially mortgaged to secure a debt, and it is shown that lots Nos. 1 and 2, of the series, are incumbered by prior mortgages, and are entirely covered by a building used as a hotel, and that lot No. 3 forms the yard for the hotel, lot No. 3 can not be sold separately from that of Nos. 1 and 2 for the benefit of the mortgage for which all three stand pledged."

The legal situation as to the property in this case is similar to that in the case above cited. In the sale from Bliss of his undivided half interest to Wetherbee on June 26, 1923, a special mortgage and vendor's lien was stipulated "on said property." (Tr., Vol. 1, p. 93). On May 27, 1927, defendant Wetherbee executed a second mortgage on the *entire* property, already affected by the prior mortgage of Bliss on his undivided interest. The property is indivisible in kind in both cases, and the same rule must be applied in this case that was applied in Stinson v. Lelievre, 22 La.Ann. 191, cited supra.

To say that the holder of the mortgage can take the position that the indivisible nature of the contract is in his favor alone and that he may entirely disregard the rights of the other contracting party, even to the extent of injuring and oppressing the debtor, is not sound law, and cannot be countenanced by this court.

Nor does the case of Slidell Savings and Homestead Association v. Seal et al., 2 La. App. 617, relied upon by counsel for plaintiff, so hold, when properly analyzed. The Court of Appeal, in deciding that case, said: *"No decision of our Supreme Court in a case parallel with this one has been cited in argument, nor can we find any.* There are Louisiana decisions, though, holding that the mortgagee may foreclose on part only of the property. Burgess v. Gordy, 32 La.Ann. 1296; Powell v. Hayes, 31 La.Ann. 789. But in each of these cases the part of the property referred to *was a divided part.*

"The Court of Cassation, in France, construing Article C.N. 2114, which corresponds with our Article C.C. 2382, says: It is well established that the indivisibility of the mortgage exists for the benefit of the creditor and cannot be invoked against him, and that such indivisibility is *in the interest of the creditor and cannot be used to deprive him of the payment of his claim.* Cass., Nov. 9, 1847. To the same effect is the opinion of Laurent, Vol. 30, No. 178. We are unable to see how the division of the mortgage by plaintiff creditor, when it released from such mortgage the undivided half of the property owned by the Succession of Willis, *can or could in any manner harm or prejudice the rights of Mrs. Seal.*

"The question under discussion is one of *the most abstruse* in the civil law, and, though *with a certain amount of diffidence,* we have reached the conclusion *that in consenting to and accepting a division of the mortgage plaintiff has lost none of its rights against Mrs. Seal."* (Italics ours.)

Counsel for plaintiff, relying upon this decision, takes the position that plaintiff, as the holder of a conventional mortgage covering the whole property, may seize an undivided one-half interest in the property to satisfy the entire debt, because the indivisibility of the mortgage exists for the benefit of the creditor *"and cannot be invoked against him to deprive him of the payment of his claim,"* whether or not the debtor *is harmed.*

In the Slidell Homestead Association Case, it appears that the plaintiff held a mortgage on some property which belonged to a Mrs. Seal and H. J. Willis jointly. The note given by these two to secure the indebtedness was not an in solido obligation, but a joint obligation, that is, each was liable for one-half only of the debt. Then Willis died and, in the administration of his succession, his half interest in the property was sold to pay the debts, and the proceeds of the sale were given to the Slidell Homestead Association to apply on the indebtedness that Willis owed it. Subsequently, the Slidell Homestead Association brought suit against Mrs. Seal on the indebtedness owed by her to it and, as she owned only an undivided one-half interest in the property and the other half had already been freed from the mortgage by the succession sale, and the Slidell Homestead

Association received the proceeds thereof, it proceeded against the half interest that Mrs. Seal owned, which was the only half the mortgage then covered.

Under these facts, the Court of Appeal held that the rights of Mrs. Seal were not in any manner *harmed or prejudiced* by the action of the Slidell Homestead Association proceeding against the undivided one-half interest which belonged to her. After distinguishing the cases relied on by the plaintiff in the case at bar, by stating that in such instances the part of the property under mortgage foreclosed on was "a divided part," the Court of Appeal referred to the French authorities to the effect that the indivisible nature of a mortgage is in the interest of the creditor and cannot be used to deprive him of the payment of his claim. The reference made in the opinion of the Court of Appeal to Laurent shows that the only thing which the French commentators had in mind was that, when the creditor died, each of his heirs had a right to demand his portion of the debt, but that, if the debtor paid each, he could not require a release of the mortgage until the entire mortgage was paid; that the mortgage rested on all the property until the entire and indivisible debt was discharged.

And we must not overlook the fact that the proof in the record in this case, particularly the judicial allegations of the plaintiff itself, establishes that the property here involved is indivisible and is worth more on the market as a unit, and that to divide it would be to materially lessen the value of each of its parts. It is clear, therefore, that the attempt of the plaintiff in this

case to foreclose the mortgage only on a one-half undivided interest in the property, while the mortgage rested upon the whole, would harm and prejudice the rights of Wetherbee, the mortgagor. This is also another fact that differentiates this case from the Slidell Homestead Association Case.

The plaintiff had full authority, under C. P. art. 684, to foreclose its second mortgage on the entire property instead of on a half interest therein, but did not do so, for the reason that there could have been no adjudication or sale without a bid sufficient to cover the prior mortgage of Bliss. However, this fact did not justify plaintiff in the foreclosure of its mortgage on an undivided half interest in the property, to the harm of Wetherbee, the mortgagor, and to the prejudice of his rights.

The suit for partition was filed in this case October 25, 1933. The original answer of the defendant George W. Wetherbee to plaintiff's petition was filed November 2, 1933, and the amended answer and reconventional demand of this defendant, attacking the title of plaintiff, was filed December 14, 1933. At that time, the property was still claimed by the plaintiff in the foreclosure proceedings; *the rights of no third party had intervened.* When the defendant filed its answer to the partition suit, setting up its defense that the plaintiff did not own any interest in the property, that the foreclosure proceedings under which the plaintiff claimed were illegal, he likewise filed a notice of lis pendens, advising the public that the defendant claimed to own the property involved, and that

the foreclosure proceedings and sheriff's sale under which plaintiff claimed title were invalid (Tr., Vol. 1, p. 164). This notice also was in the mortgage certificate which was read out at the sheriff's sale, advising all prospective bidders of the defendant's defense and counter-attack. (Tr., Mortgage Certificate, Vol. 1, pp. 156 to 165.) The mortgage which plaintiff foreclosed was recorded and its recordation gave notice to all persons of its provisions and protected the mortgagor in his rights under the mortgage he had given. (Tr., Vol. 2, pp. 11 to 17.)

The purchase of the property at the partition sale by Lodwick Lumber Company was therefore done with knowledge of the contentions of the defendant that the title of the plaintiff was invalid. Consequently the Lodwick Lumber Company acted at its peril in making this purchase and took whatever title it acquired subject to the action of this court on appeal.

In Viley v. Wall, 154 La. 221, at page 229, 97 So. 409, 411, the contention was there made just like it is here urged: that the sole remedy of the foreclosed debtor was by appeal or to enjoin, and the court in answer said: "We have carefully examined the jurisprudence and have been unable to find any decision sustaining this view; nor have defendants cited any case so holding *where the property had not passed out of the hands of the purchaser at such sale, and who was charged with knowledge of* and participation in the fraud and conspiracy, *or other nullities or illegalities upon which the same was attacked.* On the other hand, our reports are full of cases where such suits have been brought and decided, in which the proceedings and sales under executory process have been assailed after the sale, and the rights of the parties determined by the merits of each case." (Italics ours.)

The case at bar, therefore, falls clearly within the scope of Viley v. Wall, above cited, and defendant Wetherbee had the right to attack plaintiff's title.

Plaintiff's position is that, even though the foreclosure proceedings by which it acquired the property be illegal and invalid, still defendant Wetherbee cannot here show that plaintiff does not have title to the property upon which it comes into court.

In bringing the partition suit, plaintiff must necessarily show that he is a co-owner with the defendant Wetherbee; otherwise, plaintiff has no standing to request the court to partition the property.

"In partition suit, ownership must be alleged and proved, and defendant may inquire into validity of proceedings whereby plaintiff acquired title upon which he sues." Bauman v. Pennywell, 160 La. 555, 107 So. 425; Samuels v. Parsons, 146 La. 262, 83 So. 548.

Particularly is this the case where plaintiff claims to have acquired the property by executory process, as in the case at bar, for "in proceedings viâ executivâ the creditor must bring himself within the letter of the law." Robb v. Potts, 2 La.Ann. 552; Bank of Leesville v. Wingate, 123 La. 386, 48 So. 1005.

It cannot be argued seriously in this case that the order of the judge, authorizing

the writ of executory process to issue in the proceedings provoked by plaintiff against the defendant, foreclosed all inquiry into the validity of these proceedings.

The answer to such contention is that executory process lacks the following elements of a judgment:

"1. It is not preceded by citation, the foundation of a judgment.

"2. It creates no issue.

"3. It decides no issue, and requires no answer or default.

"4. *It adjudicates to the plaintiff no right which is not secured by his notarial act, nor deprives him of any thus secured.* * * *

"7. *It cannot support the plea of res judicata or lis pendens.*" (Italics ours.) Mitchell v. Logan, 34 La.Ann. 998, at page 1002. See, also, McCoy v. Hunter, 167 La. 1032, 1036, 120 So. 767.

Defendant clearly has the right to attack plaintiff's title in the present suit.

▆ Our conclusion is that the title upon which plaintiff predicates its right to a partition is invalid. Then the sale to Lodwick Lumber Company automatically falls. Plaintiff is defendant in reconvention and obtained in the court below judgment for title and partition by licitation, and the property was sold to the lumber company. The legal situation in the case is the same as obtains where the defendant sells property which is in litigation, after a decision of the trial court, which is reversed on appeal. In such cases where a notice of lis pendens is recorded, the purchaser takes title subject to the action of this court on appeal.

▆ The dismissal of plaintiff's suit would bring about the dismissal of the intervention of M. Risinger, who holds under the foreclosure of Abel Bliss of his mortgage against George W. Wetherbee. Gorman v. Gorman, 158 La. 274, at page 276, 103 So. 766, and cases there cited.

On August 27, 1936, Mrs. Nettie L. Bliss, executrix of the succession of Abel Bliss, deceased, was substituted as party defendant in this case by the order of this court.

We do not find it necessary to pass upon the third ground of attack upon plaintiff's title made by the defendant George W. Wetherbee that there was no actual seizure of the property preceding the sale.

It is ordered that the judgment appealed from be annulled and reversed.

It is now ordered that there be judgment in favor of defendant George W. Wetherbee and against Continental Securities Corporation, plaintiff, declaring and decreeing null and void and without effect the title of plaintiff to an undivided one-half interest in all the property described in plaintiff's petition, alleged to have been acquired by plaintiff from defendant George W. Wetherbee August 5, 1933, under executory process, in suit No. 11,622 on the docket of the district court for the parish of Bossier, and that plaintiff's suit be dismissed at its costs.

It is further ordered that the intervention of M. Risinger be also dismissed at his cost, reserving to intervener whatever right he may have to proceed by a separate action.

On Rehearing.

ODOM, Justice.

We have further considered all issues involved in this case, and our final conclusion is that our former opinion is correct in so far as we held that the Continental Securities Corporation had no right to foreclose its mortgage on only an undivided one-half interest in the property, and that Wetherbee's mortgage to the bank did not include the mineral rights.

But we now think our holding that because we reversed the judgment of the district court rendered in the partition suit ordering the sale of the property to effect a partition, "the sale to the Lodwick Lumber Company automatically falls" was erroneous.

The basis of that holding was thus stated by us:

"Plaintiff is defendant in reconvention and obtained in the court below judgment for title and partition by licitation, and the property was sold to the lumber company. The legal situation in the case is the same as obtains where the defendant sells property which is in litigation, after a decision of the trial court, which is reversed on appeal. In such cases where a notice of lis pendens is recorded, the purchaser takes title subject to the action of this court on appeal."

If, in fact, Wetherbee had filed his notice of lis pendens in time and as is contemplated by the statute (Act No. 22 of 1904), then in law his rights would have been protected and the purchaser of the property at partition sale would have ac-

quired it subject to those rights. But he did not file the notice in time, and for that reason lost such rights as the statute was intended to afford.

The pertinent facts stated chronologically are that the Continental Securities Corporation purchased an undivided one-half interest in the property at foreclosure sale on August 5, 1933. The executory proceeding under which it was sold was brought by the corporation, the holder and owner of the note, against Wetherbee, the maker and mortgagor. Wetherbee did not oppose the executory proceeding. After notice was served on him and the lapse of legal delays, a writ of seizure and sale was issued; the sheriff seized, advertised, and sold the property to the corporation in due and regular form.

On October 25, 1933, or two months and twenty days later, the corporation brought suit to partition the property, alleging that it owned an undivided one-half interest therein, the same having been acquired at foreclosure sale, and that Wetherbee owned the other undivided half. It was alleged that Abel Bliss held a mortgage on Wetherbee's half interest and that Bliss should be made a party to the partition proceedings in order that he might assert his rights. The corporation prayed that it and Wetherbee be recognized as owners in indivision of the property, one-half each, and that there be judgment decreeing a partition by licitation.

Wetherbee was cited and on November 16, 1933, answered. He denied that the corporation owned an interest in the land, and, assuming the position of plaintiff in recon-

vention, alleged that the entire foreclosure proceeding under which the corporation claimed to have acquired its title, and the sheriff's deed, were null, void, and of no effect for reasons specifically set up.

The filing of this answer and reconventional demand was the beginning of a contest between the corporation and Wetherbee over the title to an undivided one-half interest in the land. But Wetherbee did not then file notice of lis pendens.

On December 13, 1933, Wetherbee filed an amended answer in which he set up additional grounds for setting aside the executory proceedings, and his prayer was the same as in the original answer.

Abel Bliss, who held the vendor's mortgage on the half interest sold to Wetherbee, filed answer on November 15, in which he denied that the corporation owned any interest in the land and prayed that its demands for a partition be denied. While the suit for partition was pending, Bliss foreclosed his mortgage against Wetherbee and at the sale purchased an undivided one-half interest in the property and subsequently sold the same interest to M. Risinger, whose deed was duly recorded.

On February 6, 1934, Risinger intervened in the partition suit, alleging that he then owned an undivided one-half interest in the land, and prayed that his ownership thereof be recognized by the court and that "said Continental Securities Corporation or George W. Wetherbee (be recognized) as the owner of the other undivided one-half interest in said property, in indivision; that the issues in this suit be determined by the Court according to law and the evidence, as above set forth, and that a partition by licitation or in kind of said property be ordered by the Court as provided by law."

Prior to the date on which Risinger filed his intervention, the case as between the corporation and Wetherbee, involving the title to the land, was decided in favor of the corporation. Risinger's intervention was filed on February 6, and on February 12 the corporation filed a motion to reopen the case, no judgment having been signed, in order to show that since the partition suit was filed and subsequent to the date on which Wetherbee's answer was filed, Risinger had acquired title, through Bliss, to an undivided one-half interest in the land involved. On February 15 Wetherbee filed formal motion to recall the ex parte order of the judge allowing Risinger to intervene. The case was reopened for all purposes over Wetherbee's objection. Whereupon, on February 26, Wetherbee answered Risinger's intervention, setting up that Risinger's title was invalid because the foreclosure proceedings of Bliss against him, as well as the deed by the sheriff to Bliss, were null, void, and of no effect, and therefore Bliss could not convey valid title to Risinger; and he prayed for judgment "declaring that the foreclosure proceedings entitled Abel Bliss v. George W. Wetherbee, No. 11,780 on the docket of this Honorable Court, are null and void and of no effect, and that the defendant, Wetherbee, is still the owner of said premises."

Therefore, on the date this answer to the intervention of Bliss was filed, there was issue joined between Wetherbee and Bliss involving the title to an undivided one-half interest in the land. But Wetherbee still did not file notice of lis pendens.

After Bliss intervened, claiming ownership of a half interest in the land, the corporation by formal pleading renewed its demands for a partition. All parties who claimed any interest in the land then being properly before the court, the case was again heard by the judge, and on April 23, 1934, he rendered his judgment, by which it was decreed, "That there be judgment herein in favor of plaintiff, Continental Securities Corporation, and of M. Risinger, Intervenor, and against the defendants, recognizing the said Continental Securities Corporation, and the said M. Risinger, Intervenor, to be owners in indivision, in the proportion of an undivided one-half (1/2) interest each" in the property sought to be partitioned, and further decreeing that the property be sold at public auction to effect a partition.

The judgment was against Wetherbee on all points. By his various pleadings he claimed (1) that the mortgage which he gave the bank did not include the mineral rights; (2) that the foreclosure proceeding by the corporation did not divest him of the title to an undivided one-half interest in the land; and (3) that the foreclosure proceeding by Bliss did not divest him of his other one-half interest. But the court decreed otherwise on all these points.

Wetherbee did not then appeal from that judgment, which was signed on April 23, 1934, nor did he, so far as the record discloses, signify his intent to appeal later. But two days after the judgment was signed, he filed notice of lis pendens, in which he set out that in his various pleadings he had claimed and that he then claimed to be the owner of the entire interest in the property.

On August 28, 1934, long after the judgment of the district court had become executory, no appeal having been taken by Wetherbee, the clerk of the district court issued his commission directing the sheriff to sell the land in accordance with the court's decree. The property was advertised for sale and was sold to the last and highest bidder on October 6, 1934. The Lodwick Lumber Company was the purchaser for the price of $82,500, which was paid in cash. Out of the proceeds the sheriff paid all costs, amounting to $987.60, leaving a balance of $81,512.40, one-half of which he paid to the Continental Securities Corporation and the other half to M. Risinger.

On April 11, 1935, Wetherbee petitioned for and was granted a devolutive appeal from the judgment decreeing that the property was owned in indivision by the Continental Securities Corporation and M. Risinger and ordering it partitioned by licitation. That was approximately eleven and one-half months after the judgment was rendered and more than six months

after the land was sold and the proceeds distributed.

In our original opinion we held that the foreclosure proceedings brought by the Continental Securities Corporation and the sheriff's deed thereunder did not divest Wetherbee of an undivided one-half interest in this tract of land, thereby reversing the judgment of the lower court to the contrary. And we held further that because Wetherbee had filed a plea of lis pendens the sale made pursuant to the judgment ordering a partition by licitation automatically fell, the purchaser having had notice of Wetherbee's judicial averments that he was still the owner of the one-half interest claimed by the Continental Securities Corporation. In the course of our original opinion we said:

"When the defendant filed its answer to the partition suit, setting up its defense that the plaintiff did not own any interest in the property, that the foreclosure proceedings under which the plaintiff claimed were illegal, he likewise filed a notice of lis pendens, advising the public that the defendant claimed to own the property involved, and that the foreclosure proceedings and sheriff's sale under which plaintiff claimed title were invalid."

The inference to be drawn from that statement is that the notice of lis pendens was filed by Wetherbee at the time he filed his answer to the partition suit, in which he claimed that he still owned the one-half interest in the property. But the record shows, and it is now admitted by counsel for Wetherbee, that the no-

tice was filed two days after the judgment was signed. So that the question before us is not what effect the filing of the notice would have had if it had been filed along with Wetherbee's pleadings, but rather what effect, if any, it had, having been filed after judgment was rendered.

Act No. 22 of 1904 reads as follows:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That, on and after January 1, 1905, the pendency of an action in any court, State or Federal, in the State of Louisiana, affecting the title, or asserting a mortgage or lien upon immovable property, shall not be considered or construed as notice to third persons not parties to such suit, unless a notice of pendency of such action shall have been made, filed or registered, in compliance with this act.

"Section 2. Be it further enacted, etc., That the notice above referred to shall be in writing, signed by the plaintiff or his attorney, stating the name of the court in which the suit has been filed, the title and number of the suit, date of filing same, the object of the suit and the description of the property sought to be affected thereby; and said notice shall be recorded in the mortgage office of the parish where the property to be affected is situated, and shall have effect from the date of filing.

"Section 3. Be it further enacted, etc., That in the rendition of judgment in such suit or action, if judgment be given against plaintiff's claim, it shall provide for the cancellation of said notice at plain-

tiff's expense, and as part of the costs of suit."

■ A notice of the pendency of an action in a court affecting the title to immovable property, in order to affect third persons not parties to the suit, must be made, filed, or registered "in compliance with this act" (section 1). And section 3 of the act shows beyond question that it was contemplated that in order to have effect against third persons, the notice must be filed prior to the rendition of judgment, for it says that "in the rendition of judgment in such suit or action, if judgment be given against plaintiff's claim, it [the judgment] shall provide for the cancellation of said notice at plaintiff's expense, and as part of the costs of suit." If the notice is filed after the judgment is rendered and signed, as in this case, then the act cannot be complied with because in the rendition of the judgment the notice cannot be canceled.

If, as a matter of law, the filing of a notice of lis pendens after judgment is rendered rejecting a litigant's claim to real property protects his rights, the filing of such notice has the same effect that a suspensive appeal from the judgment would have. If counsel for Wetherbee be correct in their contention, the notice of lis pendens may conveniently be substituted for a suspensive appeal. Such, we think, was never contemplated by the lawmakers.

■ In view of the purpose of Act No. 22 of 1904, as explained by this court in several cases, it was intended by the lawmakers, we think, that the notice of lis pendens should be filed and registered in the mortgage records contemporaneously with the filing of the suit affecting title to real estate. The law that prevailed prior to the adoption of that act "made the mere filing of the suit [affecting title to real property] constructive notice to all the world that the plaintiff claimed the property, and thus charged every one, however innocent, with knowledge of that fact, with the ensuing consequence that he then purchased at his peril, even 'though * * *' there was no outward sign of defect in the title' of his vendor." Richardson Oil Co. v. Herndon, 157 La. 211, 102 So. 310, 312.

■ The prior law referred to is article 2453 of the Civil Code, which reads as follows:

"The thing claimed as the property of the claimant can not be alienated, pending the action, so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another's property, and does not prevent him from being put in possession by virtue of such judgment."

But now, the mere filing of a suit affecting title to real property is not notice "to all the world" that plaintiff claims the property. Another method of giving such notice has been adopted, which is the filing of notice of lis pendens and having the same registered in the mortgage records of the parish as provided by the act of 1904. The filing and registering of this notice subserves precisely the same

purpose as did the filing of the suit under the prior law.

In Wells et al. v. Blackman, 117 La. 359, 41 So. 648, 649, we said with reference to the effect of Act No. 22 of 1904:

"Said Act No. 22 has brought no change in our law, except that, whereas, formerly, third persons dealing with property involved in litigation had to take notice of the pendency of the litigation without registry (article 2453, Rev.Civ.Code), now, under said act, they are not required to do so, unless the notice prescribed by the act has been duly recorded."

To the same effect are the cases of State ex rel. Metropolitan Land Co. v. Recorder of Mortgages, 166 La. 271, 117 So. 145; Succession of Thomas, 114 La. 693, 38 So. 519; Harang et al. v. Golden Ranch Land & Drainage Co., 151 La. 702, 92 So. 305; Roussel v. Realty Co., 137 La. 616, 69 So. 27; Richardson Oil Co. v. Herndon, supra.

It is our opinion that there was no compliance with the act in this case, and it follows that the property was sold without notice to third persons of Wetherbee's claims.

It is argued that the purchaser of the property took it subject to the final results of the litigation between Wetherbee on the one side and the corporation and Bliss on the other, and article 2453 of the Civil Code is cited in support of it. If the codal provision stood alone, the argument would be sound, because under its provisions the filing of the pleadings alone was "notice to the world" that he

was claiming the property, and a purchaser, however innocent otherwise, was bound by such notice. But that is not true now. Under the precise language of Act No. 22 of 1904, the pendency of an action "affecting the title * * * shall not be considered or construed as notice to third persons not parties to such suit." Under the act the only effective notice is the filing of the notice of lis pendens, and its registry in the mortgage records. As said by the court in Wells v. Blackman, supra, formerly third persons had to take notice of such suits, but now they do not.

We held on original hearing that Wetherbee was not divested of his title to an undivided one-half interest in the land by the foreclosure proceedings brought by the Continental Securities Corporation. In the brief on rehearing, counsel for Wetherbee cite article 2452 of the Civil Code, which says that "the sale of a thing belonging to another person is null." Their argument is that inasmuch as it was held on appeal that Wetherbee was not divested of his title, the partition sale is null because it was a sale of his property. The argument is not sound. This was a judicial sale made in pursuance of an executory judgment decreeing that Wetherbee had no title, and the sale was made without legal notice to third persons of Wetherbee's claim. If he had given legal notice of his claim to all third persons, then article 2452 of the Code would apply and the sale would be void. But as there was no such notice, the sale pursuant to the judgment cannot be considered as "the sale of a thing belong-

ing to another" within the meaning of the Code, because at the time the sale was made the judgment decreeing that Wetherbee had no title was in effect and was binding on him, and by it he remained bound until it was reversed on appeal. If there had been no judicial sale of the property in the meantime, the effect of the reversal of the judgment would be to restore him to the ownership of the land. But he permitted the property to be sold at public auction without notice to third parties, long before the judgment was reversed.

A sale under such circumstances cannot be considered as the sale of a thing belonging to another. And the purchaser did not take the property subject to the final results of the litigation. These points were discussed at length by this court in the case of Harang et al. v. Golden Ranch Land Co., 151 La. 702, at pages 703, 704, 92 So. 305, where the court said:

"Prior to the passage of Act No. 22 of 1904, every one was charged with notice of the pendency of a suit affecting real property, *and a purchaser after its filing acquired subject to the result of such litigation, though not actually a party thereto. Such a sale was considered as the sale of the property of another and void, as to the successful litigant.* R.C.C. 2453, Lacassagne v. Chapuis, 144 U.S. 119, 12 S.Ct. 659, 36 L.Ed. 368. However, this act (No. 22 of 1904), while not an express amendment of that article of the Code, had the effect of making the latter inoperative, *except in those cases*

*where the act was complied with.* [Italics ours.] * * *

"Section 3 provides for the cancellation of the notice from the record at plaintiff's expense, if unsuccessful, and section 4 repeals all laws in conflict with the act.

"The undoubted purpose of this law was to protect purchasers of real property which might be involved in litigation, and to relieve them of the former effects, except when the notice was recorded. But for its plain language and purpose, that the pendency of such litigation 'shall not be considered or construed as notice to third persons *not parties to such suit,'* it might be argued that purchasers from a defendant could be said to be parties privy to the title litigated with him and bound by the judgment; but we think nothing is left for interpretation, and the act must be enforced as written. Roussel v. Realty Co., 137 La. [616], 625, 69 So. 27. *Formerly, the Code expressly subjected such purchasers to the results of the litigation, but the statute has clearly limited it to those cases where notice has been recorded in compliance therewith."* (Latter Italics ours.)

In Jefferson v. Gamm et al., 150 La. 372, 90 So. 682, 684, it was said that the doctrine is now well settled "that the reversal of a judgment on a devolutive appeal does not affect the validity of a sale that was made in execution of the judgment after it had become executory; the only right or remedy of the party aggrieved in such case being to claim

the proceeds of the sale." Citing numerous cases.

■ It is argued that neither that case nor any of those cited in support of the doctrine as above announced is applicable to a case like this because they relate to the execution of money judgments, and not to the execution of judgments where title to property is originally contested by the litigants. There is a distinction, of course, but the doctrine is applicable to a case where the action involves title to real property and the claimant fails to comply with the act of 1904 by giving notice of the pendency of the action, which is the case here. All judgments, whether for money or a thing, become executory in ten days after signing if not appealed from suspensively (Caspari v. Osborne, 169 La. 983, 126 So. 500), and if not appealed from suspensively within the delays allowed by law, an appeal taken subsequently, that is, a devolutive appeal, does not stay the execution of a judgment. C.P. art. 578.

■ At the time the partition suit was tried in the district court and the judgment rendered and signed, all claimants to any interest in the land involved were in court as parties. Under the circumstances shown to exist, we think the sale made pursuant to the judgment was valid and conferred good title in the Lodwick Lumber Company. It follows that Wetherbee's rights as against either the Continental Securities Corporation or Bliss are relegated to the proceeds of the sale.

■ In our original opinion we held that the mortgage which Wetherbee gave the bank did not include his mineral rights. We adhere to that holding. But that question, like the question of title to the land, was litigated before the court below. The judgment was against Wetherbee on all points. For the reasons stated herein, our reversal of the judgment did not restore his title to the land, and for the same reasons it did not restore to him the mineral rights. He lost title to both the land and the mineral rights.

For the reasons assigned, our original opinion is reinstated, except as to the view therein expressed that the title acquired by the Lodwick Lumber Company at the partition sale was invalid, it being our opinion now that its title is valid. Right is reserved to Wetherbee to apply for a rehearing.

O'NIELL, C. J., dissents on the ground that the decision in this case is contrary to the decision in Richardson Oil Co. v. Herndon, 157 La. 211, 102 So. 310.

On Second Application for Rehearing.

PER CURIAM.

■ The charges of fraud and collusion between plaintiff and the Lodwick Lumber Company made by Wetherbee in his application for rehearing were not involved in the case before the court. Such charges not having been involved, this court did not and could not decide what effect such charges, if true and if proved in a proper proceeding, would have as to

the validity of the Lodwick Lumber Company's title, nor did the court decide or intend to decide issues between parties not before the court.

What we held in our opinion on rehearing was that the filing of the notice of lis pendens by Wetherbee after the signing of the judgment ordering the property partitioned by licitation was ineffective as to third persons—was not constructive notice "to all the world" that plaintiff was claiming the property, and that one not a party to a suit and who is otherwise innocent, purchasing the property at a judicial sale, is not bound by such notice; that to construe Act No. 22 of 1904 otherwise would be to hold in effect that the filing of a notice of lis pendens after judgment would subserve the purpose of a suspensive appeal, which was never contemplated by the lawmakers.

Rehearing refused.

O'NIELL, C. J., adheres to his dissent.