552 So.2d 508 (1989)
CENTRAL BANK, Appellee,
v.
Benton FROST & Oliece Arrant Frost Individually and d/b/a Frost Construction Company, Appellants.
No. 20898-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Writ Denied January 12, 1990.
*509 Billy Rex Harper, Jr., Jonesboro, Paul Henry Kidd, Monroe, for appellants.
Felix J. Bruyninckx, III, Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendant-in-rule, Arthur Britton, appeals the judgment of the trial court ranking Britton's mortgage on immovable property behind that of the plaintiff, Central Bank. We affirm.

FACTS
Arthur Britton, husband of Elizabeth Louise Mayo Britton, owned approximately 154 acres of land in Ouachita Parish. Ownership of the property was transferred to Prosperity Park, Inc., a corporation in which Mr. Britton owned all the stock. The corporation executed two mortgages on the property. The first was recorded in the mortgage records on July 18, 1977 and the second was recorded on May 11, 1978.
The Brittons were subsequently divorced. As a result of the divorce, Mrs. Britton was named owner of all the corporation stock and was named liquidator of the corporation. In 1981, Mrs. Britton, as liquidator of the corporation, sold the property to Paul Henry Kidd, a professional corporation.
In 1982, Mr. Britton paid Ouachita National Bank the amount owed by Prosperity Park, Inc. and obtained the corporation's mortgage notes. The corporation filed suit *510 against Mr. Britton, seeking to have the mortgages cancelled from the mortgage records, claiming that the obligation was extinguished through confusion when acquired by Mr. Britton. The trial court agreed and on February 10, 1983, ordered Mr. Britton's mortgages erased from the mortgage records of Ouachita Parish. The mortgages were erased from the records that same day. On March 23, 1983, Mr. Britton devolutively appealed the trial court judgment.
On February 18, 1983, while the delays for filing a suspensive appeal were still running, but before Mr. Britton filed his devolutive appeal, Paul Henry Kidd sold the property to a group of persons, including the defendants in this case, Benton and Oliece Frost. These buyers, in reliance on the public record, bought the property free of all encumbrances.
This court considered Mr. Britton's devolutive appeal and ruled that the trial court was clearly wrong in ordering that the mortgage inscriptions be cancelled from the public records. Prosperity Park, Inc. v. Britton, 440 So.2d 893 (La.App. 2d Cir. 1983). On December 28, 1983, pursuant to the judgment of this court reversing the trial court's order cancelling the mortgages, Mr. Britton caused the mortgages to be reinscribed in the public records.
On July 23, 1986, after the Britton mortgages had been reinscribed in the mortgage records, the Frosts mortgaged the property to the plaintiff in the present case, Central Bank. In April, 1988, Central Bank filed a petition for executory process to foreclose on the mortgage given by the Frosts. In connection with that proceeding, Central Bank obtained a mortgage certificate which listed the mortgages held by Mr. Britton. Central Bank then filed a rule to rank mortgages and privileges, naming Arthur Britton and his former spouse, Elizabeth Britton, as defendants-in-rule.
Following a hearing, the trial court ruled that at the time the Frosts bought the property in 1982, there were no mortgages or encumbrances affecting the property on the public records and therefore the Frosts were not bound by the mortgages held by Mr. Britton. The court further ruled that the Frosts obtained the right to alienate the property to any other party by conveyance or by mortgage. The court reasoned that cancellation of the mortgages, prior to the lapsing of the delay for taking a suspensive appeal, constituted a premature execution of the judgment. The court held, however, that by taking a devolutive appeal and not a suspensive appeal, Mr. Britton ratified the premature execution of the judgment ordering the erasure of the mortgages from the public records. By failing to suspensively appeal the order cancelling his mortgages, Mr. Britton assumed the risk that the property would be disposed of and his security rights in it would be lost. Because the Frosts had clear title to the property, the court found that they had the right to grant a first mortgage and, therefore, the mortgage which they executed in favor of Central Bank was superior to Mr. Britton's mortgages.
Mr. Britton filed a motion for new trial which was denied by the trial court. Mr. Britton then appealed the trial court judgment, claiming the trial court erred in ruling that the mortgage held by Central Bank and recorded subsequent to the reinscription of his mortgages, primed those which he held.

DISCUSSION
Mr. Britton argues that because the 1983 trial court judgment ordering the cancellation of his mortgages was executed prematurely and because the trial court was incorrect in ordering the mortgages cancelled, he did not loose his security interest in the property during the period in 1983 when his mortgages failed to be part of the public record. In addition, he argues that the mortgages were cancelled by fraud, error or mistake, and therefore, his mortgage rights to the property were not lost by the cancellation of the mortgages, and those mortgage rights remained viable, even against third party purchasers in good faith, such as the Frosts.
Mr. Britton is correct in his assertion that the 1983 trial court judgment was *511 prematurely executed when it was recorded and his mortgages cancelled.
In 1983, when Mr. Britton's mortgages were erased from the mortgage records, LSA-C.C.P. Art. 2252 provided:
A judgment creditor may proceed with the execution of a judgment only after the delay for a suspensive appeal therefrom has elapsed.[1]
The recordation of a judgment in the mortgage records constitutes a step in the execution of a judgment. Ortiz v. Demarest, 455 So.2d 1195 (La.App. 4th Cir. 1984), writ denied, 457 So.2d 1 (La.1984); Goldking Properties v. Primeaux, 477 So.2d 76 (La.1985); Maise v. Demarest, 483 So.2d 1193 (La.App. 4th Cir.1986).
If a judgment is recorded before the delay for taking a suspensive appeal has expired, and such an appeal is timely filed, the execution of the judgment is premature and is to be erased from the records. Denny v. Jefferson Construction Company, Inc., 164 La. 775, 114 So. 650 (1927).
In the present case, the recordation and execution of the trial court judgment was undertaken prematurely. The plaintiff argues, however, that because Mr. Britton filed a devolutive appeal, rather than a suspensive appeal, the premature execution of the trial court judgment was cured and any objections to the premature execution were waived. The plaintiff argues that because a devolutive appeal does not suspend execution of the judgment, the Frosts bought the property free and clear and were not bound by Mr. Britton's mortgages.
It is true that a devolutive appeal does not suspend the execution of a judgment. International City Bank & Trust Company v. Neyrey, 276 So.2d 808 (La. App. 4th Cir.1973). The premature recordation of a judgment is corrected and objections are waived when the lapse of time for the filing of the appeal passes. Premature recordation is at worst a relative nullity which is cured when the time for the taking of a suspensive appeal has run. Associates Financial Services Company v. Hillebrandt, 250 So.2d 75 (La.App. 1971) International City Bank & Trust v. Neyrey, supra.
In the present case, the trial court correctly ruled that because Mr. Britton failed to suspensively appeal the judgment ordering the erasure of his mortgages from the public record, any defect resulting from the premature execution of the judgment was cured at the end of the delay for filing a suspensive appeal. Therefore, when the Frosts purchased the property, they acquired title free and clear of Mr. Britton's mortgages. The law is well settled that a third party purchasing property in good faith may rely upon the ownership status of real property as reflected on the face of the public record. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909); Noe v. Roussel, 310 So.2d 806 (La.1975).
Mr. Britton had knowledge through his involvement in the litigation that his security interest in the property was in jeopardy. The law clearly provided him a means to protect his interest by filing a suspensive appeal. Had he done so, the Frosts would have purchased the property burdened with the mortgages and, when Mr. Britton succeeded on appeal in having his mortgage reinstated on the public record, those mortgages would have primed any other mortgages which were subsequently executed and recorded.
Because the Frosts acquired title to the property based upon a clean public record, during the pendency of Mr. Britton's devolutive appeal, the effect of the decision in favor of Mr. Britton, on appeal, had no effect on the Frost's property rights.
*512 The reversal of a judgment on a devolutive appeal does not affect the validity of sale made in execution of a judgment after it became executory; the only right or remedy of the party aggrieved in such a case is to claim the proceeds of the sale. Continental Securities Corporation v. Wetherbee, 187 La. 773, 175 So. 571 (1937). See also First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987).
Mr. Britton further contends that the public records doctrine is not applicable in this case. He argues that because his mortgages were cancelled due to fraud, error, or mistake, the public records doctrine does not protect third party purchasers such as the Frosts and therefore Mr. Britton's mortgages are effective against them and prime the mortgage held by Central Bank.
An exception to the public records doctrine exists where a mortgage is cancelled from the public records through fraud, error or mistake. The cancellation of a mortgage through fraud, error or mistake, without the consent or knowledge of the holder, does not deprive the holder of his security, even as against third parties dealing with the property in good faith in reliance on the public records. McL. Development Company, Inc. v. Pyburn, 268 So.2d 296 (La.App. 2d Cir.1972); DavisWood Lumber Company v. DeBrueys, 200 So.2d 916 (La.App. 1st Cir.1967); National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App. 2d Cir.1967), writs denied, 250 La. 467, 196 So.2d 533, 250 La. 470, 196 So.2d 534 (1967).
This rule applies not only to mortgages cancelled from the public record through fraud, but also those cancelled due to error or mistake. DavisWood Lumber Company v. DeBrueys, supra. For example, in Ralston Purina Company v. Cone, 344 So.2d 95 (La.App. 2d Cir.1977), this court found that the plaintiff's mortgage was enforceable against a good faith third party purchaser where the mortgage had been erroneously cancelled from the mortgage records due to a mistake on the part of the parish clerk of court. The property was purchased by a good faith third party in reliance upon the public record showing the cancellation of the mortgage. This court held that the mortgage holder retained his security interest in the property, even against the good faith third party purchaser, and the purchaser was entitled to damages in the amount of the purchase price of the property.
In the present case, Mr. Britton contends that the mortgage was wrongfully cancelled from the public records due to an erroneous ruling by the trial court. He therefore argues that the cases cited above, finding a fraudulent or erroneous cancellation, should apply to defeat the application of the public records doctrine. Mr. Britton argues that because the mortgages were wrongfully cancelled, they remained effective even against third party good faith purchasers such as the Frosts.
We have reviewed the cases cited by Mr. Britton which create an exception to the public records doctrine in situations where mortgages are erroneously, mistakenly or fraudulently cancelled from the public record. We find that those cases do not apply to the facts of this case.
Cases involving fraudulent or erroneous cancellations, in which the exception to the public records doctrine has been applied, involve mortgage holders who did not know or consent to the cancellation and who had no way of knowing of the wrongful cancellation of the mortgage and no means of protecting their security interests in the property. In many of these cases, the mortgage holder becomes aware of the cancellation only after a sale of the property to a third party. In such cases, mortgage holders are limited in the methods available to correct the wrongful cancellations and to protect their security interests. Therefore, the exception to the public records doctrine is necessary in the interest of justice.
By contrast, in this case, Mr. Britton was a party to the initial litigation in which his mortgages were cancelled from the public record and was aware of the judgment ordering the cancellation of his mortgages. At that point he had available to him the protection afforded by suspensive appeal. However, he chose not to *513 utilize that method of assuring that his rights in the property remained intact pending the outcome of his appeal. Because Mr. Britton had knowledge of the order directing cancellation of his mortgages, and was provided a remedy by which he could protect his security interest, the "fraud, error and mistake" exception to the public records doctrine is not applicable here.
In the present case, Mr. Britton lost his right to assert his mortgage rights to the property against the Frosts when he failed to file a suspensive appeal. However, Mr. Kidd, who sold the property to the Frosts during the pendency of the appeal, presumably obtained funds that could have been used to satisfy Mr. Britton's mortgage interest in the property. Based upon his successful devolutive appeal, Mr. Britton could arguably have proceeded against Mr. Kidd to obtain the proceeds of the sale of the property to the Frosts. See Continental Securities Corporation v. Wetherbee, supra.
Central Bank acquired its mortgage from the Frosts subsequent to the reinscription of Mr. Britton's mortgages in the public records. However, because the Frosts acquired title clear which was of Mr. Britton's mortgages, they were free to execute a first mortgage in favor of Central Bank. Mr. Britton's mortgages had no effect upon the Frosts property rights.
For these reasons we find the trial court was correct in ruling that Mr. Britton's mortgages could not be enforced against Mr. and Mrs. Frost. Therefore, the mortgage held by the plaintiff, Central Bank, primes that held by the defendant-in-rule, Mr. Britton.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court in favor of the plaintiff, Central Bank, at appellant's costs.
AFFIRMED.
NOTES
[1] In 1985, LSA-C.C.P. Art. 2252 was amended to provide:

A judgment creditor may proceed with the execution of a judgment only after the delay for a suspensive appeal therefrom has elapsed; however, recordation of a judgment in the mortgage records prior to the lapsing of the delay for a suspensive appeal does not begin proceedings for the execution of the judgment.
However, the facts in this case occurred prior to this amendment and the jurisprudence interpreting former LSA-C.C.P. Art. 2252 will be applied to this case.