MARVIN, Judge.
The holder of two mortgage notes that were originally negotiated by a corporation he had earlier created, appeals a judgment ordering the clerk of court to cancel the inscription of the two mortgages on the public records. We reverse and remand.
The defendant, holder of the notes, is Albert Britton, who was the sole incorporator, stockholder, and executive officer of the corporation, Prosperity Park, Inc., until he and his wife became embroiled in litigation here and in Ohio to dissolve their property and their marriage. As a result of that litigation, Mrs. Britton became the liquidator of Prosperity Park. In that capacity, as well as individually, she and her attorney, who are recent vendees of respective tracts of the property from Prosperity Park, are co-plaintiffs with Prosperity Park in this action. Mrs. Britton now owns about 13 acres of the property. Her lawyer now owns about 140 acres of the property. Defendant Britton represented himself in the lower court.
The issues concern Britton’s dealings with a bank, individually and through the corporation, the corporation’s payment of his debts and vice versa, who owes whom what, and whether any debt which might be owed him by the corporation is secured by the mortgage notes he holds.
The Facts
The Brittons were married in 1972. While apparently residing in Ohio, he bought the Louisiana property (approximately 153 acres) partially on credit ($69,-350) in 1975. Britton’s vendor transferred Britton’s $69,350 note to the Ouachita National Bank. On December 6, 1976, and apparently while experiencing marital difficulty, Britton incorporated Prosperity Park and transferred the property to the corporation in return for 10,000 shares of its stock. The deed from Britton to the corporation mentions that the property is sold subject to the $69,350 indebtedness. During the trial of this action, Britton introduced a resolution of Prosperity Park dated December 7, 1976, expressly acknowledging its indebtedness to Britton, individually, for at least $100,000 for his personal funds he used to acquire and improve the corporation.
Britton made payments to the bank ($23,-405 on April 16, 1976 and $21,905 on April 16, 1977) to reduce the $69,350 balance on his 1975 vendor’s lien note to $34,675. On June 9,1977, Britton borrowed $15,336 from the bank. Britton made payments on this second indebtedness to reduce its balance to $8,655 by May 11, 1978.
On July 14, 1977, Prosperity Park executed the $100,000 mortgage note in question in this appeal and apparently then or later gave it to the bank. On May 11,1978, Prosperity Park executed the $50,000 mortgage note in question in this appeal and gave it to the bank. It appears that these notes were given to the bank to secure a loan of $46,539 made to Prosperity Park on May 11, 1978. According to the bank records, most of this loan was used on that date to pay in full the balance of Britton’s indebtednesses to the bank ($34,675 balance on the 1976 loan and $8,655 balance on the 1977 loan).
The Brittons were legally separated in Ohio on December 13, 1978. On June 4, 1979, Prosperity Park conveyed the property in question to Britton’s sister, Mrs. Barton, for $100 cash and subject to the corporation’s mortgage indebtedness to the bank. *895 Mrs. Barton then sought to evict Mrs. Brit-ton from the property. Barton v. Britton, Docket No. 14,169 of this court, unpublished opinion dated June 10, 1980.
By virtue of a judgment of the Ohio court of August 27, 1979, Mrs. Britton became the owner of all of the stock of Prosperity Park. That judgment was made ex-ecutory in Louisiana (Britton v. Britton, Docket No. 14,617 of this court, unpublished opinion dated August 24, 1981) and Mrs. Britton replaced Mr. Britton as liquidator of Prosperity Park on October 17,1980. As liquidator, she then sued Mrs. Barton to set aside the sale of the corporate property on grounds of lesion beyond moiety. ⅛ that action, the value of the property was determined to be $241,000 in 1979. We affirmed a judgment conditionally setting aside the sale. Prosperity Park v. Barton, 404 So.2d 1307 (La.App. 2d Cir.1981).
The action out of which this appeal arises was filed in the district court on December 13, 1982. Still pending in the district court is an action to inventory and partition the community estate that once existed between the Brittons, and other litigation.[1]
Either on May 22, 1980, or on May 11, 1982, Britton paid the balance that Prosperity Park owed on its 1978 loan ($42,475) and obtained the mortgage notes in question from the bank.[2] He apparently thereafter demanded payment on these notes as well as payment on other “indebtednesses” owed him by the corporation. See fn. 1.
Britton has employed appellate counsel who raises three errors, the essence of which relate to Prosperity Park’s December 7, 1976, acknowledgment of the indebtedness to Britton and to Britton’s later payment of the $42,475 to the bank to satisfy the Prosperity Park debt. Britton’s first contention is that summary process was not authorized for this action. This is a procedural objection which' must be raised through a dilatory exception and which is waived unless pleaded. Defendant did not file the dilatory exception in the trial court and cannot object here to summary process below. CCP Art. 926.
Britton contends here that when Prosperity Park paid his personal indebtednesses to the bank on May 11, 1978, that a novation occurred and his debts to the bank were extinguished. He argues then that he later paid Prosperity Park’s debt of $42,475 to the bank because the mortgage notes which secured that indebtedness primed his unsecured claims against the corporation (of at least $100,000 plus the amount he paid to obtain the mortgage notes). In this respect, he contends that he became legally subrogated to the rights of the bank against Prosperity Park and implies that he should be “secured” by the mortgage notes. CC Art. 2161.
The appellees argue that Britton did not plead these matters as an affirmative defense in the lower court and that we should not consider these contentions. CCP Art. 1005. Alternatively, appellees argue that Britton was a debtor of Prosperity Park because Prosperity Park paid Britton’s debts to the bank in 1978 ($43,330) and that even if the corporation owes Britton the $42,475 he later paid the bank to satisfy the debt of Prosperity Park, this obligation was confused and extinguished because Britton was both a creditor ($42,475) and a debtor *896 ($43,330) of Prosperity Park. CC Art. 2217. Appellees assert that the trial court did not believe Britton’s testimony that the corporation formally acknowledged by the resolution on December 7, 1976, the indebtedness of $100,000 to Britton.
This record reveals only that the trial court stated before it ruled that it would not be ruling on the validity of the several debts, and implied that it would rule solely on whether any of these debts were secured by the mortgages. If the trial judge gave reasons when it later ruled, these reasons are not contained in this record. We cannot infer from these circumstances that the trial court determined that the December 7, 1976, resolution was a later fabrication by Britton, as appellees contend. We do review the record in the light most favorable toward upholding the judgment appealed. Commercial Union Ins. Co. v. Stidom, 408 So.2d 285 (La.App.2d Cir.1981). At the conclusion of the trial, Britton urged the trial court to rule that day on the mortgages, “if not by law, by equity, you know, so [he] could get a portion of [his] fair share.” We do not find that Britton filed any brief in the lower court.
In Edwards v. Standard Oil Co. of Louisiana, 175 La. 720, 144 So. 430, 431 (1932), we are cautioned that “it is improper, unless the whole law has been examined, to give judgment or advice upon a view of a single clause of it.” We are asked to review a record that leaves much to be desired. This record does not reveal the extent to which Britton separated his personal affairs from that of his corporation. This record does not reveal when Britton gave the bank the $100,000 mortgage note dated July 14,1977, whether, or in what capacity, he held the note before he gave it to the bank. The record does not reveal in what capacity he later received this note and the $50,000 mortgage note back from the bank. This record does not reveal the source of the money which was used to pay the debts to the bank between the time Prosperity Park was incorporated on December 6, 1976, and the time the bank was finally paid by Brit-ton, nor how much of the value of the corporate property resulted from direct contributions from either Mr. or Mrs. Britton. We are also unable to determine from this record when and whether a community existed in Louisiana, and to what extent, if any, community funds were used to enhance the corporation, or debts to the community from the corporation were created.
Our decisional ability is further handicapped by what may appear from some things in the record. The bank officer who testified on behalf of appellees was able to explain nothing about the loans to Britton and to Prosperity Park because he did not make them for the bank. In that respect we are left with what the bank’s “history card” on each loan shows in skeleton form. The cards are apparently computer ledger printouts which leave much to be desired. The card on the 1975 vendor’s lien note makes no reference to Prosperity Park. The card on the $15,000 Britton note of June 9, 1977, seems to indicate, that Prosperity Park was somehow connected with that loan. The card on the Prosperity Park loan of May 11,1978, seems to indicate that Britton was somehow connected with that loan.
While Prosperity Park did not assume the vendor’s lien debt on the property and thereby become personally liable to the bank on that debt, and while the bank may have substituted debtors when Prosperity Park “paid off” Britton’s individual debts to the bank on May 11, 1978, these findings would not necessarily resolve the character of the legal relationship and entanglement between Britton, Prosperity Park, and Mrs. Britton. The fact of Britton’s later payment of Prosperity Park’s debt to the bank also does not resolve the character of the relationships mentioned. Depending on circumstances not revealed by this record, Britton, at that time, could have been a debtor, or a creditor, perhaps once secured or perhaps a third party, or a negotiorum gestor, and subrogated legally perhaps upon making the payment.
In this action, appellees alleged that Brit-ton had demanded payment of the mortgage notes from Prosperity Park and that *897 he sought to employ the notes to support his contention that Mrs. Britton owed him on the dissolution of the community. Ap-pellees asserted that Britton’s contentions were not germane to this action to cancel the inscription of the notes, but properly were the subject of the pending action for dissolution pending under another docket number in the district court. Appellees prayed for judgment for $65,000 and for the cancellation of the mortgage inscriptions. The judgment of the district court was rendered shortly after the trial. That judgment considered Britton’s answer and evidence to be “insufficient,” and ordered that the clerk of court “proceed” to cancel the inscriptions.
Appellees, however, under their own allegations, had the burden of proving that nothing was owed by Prosperity Park to Britton and that the mortgage notes secured nothing. Britton did not have the burden of proving otherwise. Like the trial court, we are unable to rule on who owed whom what and we must find that the trial court was clearly wrong in ordering the mortgage inscriptions cancelled from the public records under the circumstances.
REVERSED, at appellee’s cost, and remanded.

. This record reveals that Britton filed executo-ry process to foreclose on the two mortgage notes on January 28, 1983, and that on January 31, 1983, Mrs. Britton obtained a writ of attachment on the notes, alleging that Britton owed her $725,000.

. The bank “history card” on this loan shows that the loan was paid May 22,1980. The bank officer who testified for appellees said that the loan was paid May 11, 1982. The amounts used in testimony and in the briefs vary from those shown on the bank records. In the lesion action, the judgment allowed Mrs. Barton 30 days in which to elect whether to pay the difference between the value of the property to the corporation and in the event of her failure to make the election, that a judgment would be rendered cancelling the sale upon the corporation depositing $51,183 plus interest into the registry of the court. Mrs. Barton apparently claimed that she paid the $51,183 to the bank after she acquired the property on June 4, 1979. The trial court judgment to the effect mentioned was signed January 13, 1981. 404 So.2d at p. 1310.